533 So.2d 281 (1988)
PW VENTURES, INC., Appellant,
v.
Katie NICHOLS, Chairman of Florida Public Service Commission, and Florida Public Service Commission, Appellees.
No. 71462.
Supreme Court of Florida.
October 27, 1988.
*282 Richard D. Melson of Hopping, Boyd, Green & Sams, Tallahassee, for appellant.
Susan F. Clark, Gen. Counsel, Florida Public Service Com'n, Tallahassee, for appellees.
Richard A. Zambo and Paul Sexton of Richard A. Zambo, P.A., Brandon, for amici curiae, C.F. Industries, Inc., IMC Fertilizer, Inc., Monsanto Co. and W.R. Grace & Co.
GRIMES, Justice.
PW Ventures, Inc. (PW Ventures) appeals from an adverse ruling of the Florida Public Service Commission (PSC). We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
PW Ventures[1] signed a letter of intent with Pratt and Whitney (Pratt) to provide electric and thermal power at Pratt's industrial complex in Palm Beach County. PW Ventures proposes to construct, own, and operate a cogeneration[2] project on land leased from Pratt and to sell its output to Pratt under a long-term take or pay contract.[3] Before proceeding with construction of the facility that would provide the power, PW Ventures sought a declaratory statement from the PSC that it would not be a public utility subject to PSC regulation. After a hearing, the PSC ruled that PW Ventures proposed transaction with Pratt fell within its regulatory jurisdiction.
At issue here is whether the sale of electricity to a single customer[4] makes the provider a public utility. The decision hinges on the phrase "to the public," as it is used in section 366.02(1), Florida Statutes (1985). In pertinent part that subsection provides:
"Public utility" means every person, corporation, partnership, association, or other *283 legal entity and their lessees, trustees, or receivers supplying electricity or gas (natural, manufactured, or similar gaseous substance) to or for the public within this state... .
Distilled to their essence, the parties' views are as follows: PW Ventures says the phrase "to the public" means to the general public and was not meant to apply to a bargained-for transaction between two businesses. The PSC says the phrase means "to any member of the public." While the issue is not without doubt, we are inclined to the position of the PSC.
At the outset, we note the well established principle that the contemporaneous construction of a statute by the agency charged with its enforcement and interpretation is entitled to great weight. Warnock v. Florida Hotel & Restaurant Comm'n, 178 So.2d 917 (Fla. 3d DCA 1965), appeal dismissed, 188 So.2d 811 (Fla. 1966). The courts will not depart from such a construction unless it is clearly unauthorized or erroneous. Gay v. Canada Dry Bottling Co., 59 So.2d 788 (Fla. 1952).
Also, it is significant that the statute itself would permit the type of transaction proposed by PW Ventures and Pratt to be unregulated if it were for natural gas services. Section 366.02(1) provides the following exemption: "[T]he term `public utility' as used herein does not include ... any natural gas pipeline transmission company making only sales of natural gas at wholesale and to direct industrial consumers... ." The legislature did not provide a similar exemption for electricity. The express mention of one thing implies the exclusion of another. Thayer v. State, 335 So.2d 815 (Fla. 1976).
This rationale is further illustrated in the statutory regulation of water and sewer utilities. As explained in the PSC order:
In parallel with Section 366.02(1), Section 367.021, Florida Statutes (1985), defines a water or sewer utility as every person "providing, or who proposes to provide, water or sewer service to the public for compensation." Section 367.022(6), Florida Statutes, expressly exempts from this definition "systems with the capacity or proposed capacity to serve 100 or fewer persons". There is not a parallel numerical exemption to the statutory definition of a public utility supplying electricity. Yet the statutory interpretation advocated by PW Ventures would require a line to be drawn somewhere between sales to some members of the public, as a presumably nonjurisdictional activity, and sales to the public generally and indiscriminately, an admittedly jurisdictional activity.
Moreover, the PSC's interpretation is consistent with the legislative scheme of chapter 366. The regulation of the production and sale of electricity necessarily contemplates the granting of monopolies in the public interest. Storey v. Mayo, 217 So.2d 304 (Fla. 1968), cert. denied, 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969). Section 366.04(3), Florida Statutes (1985), directs the PSC to exercise its powers to avoid "uneconomic duplication of generation, transmission, and distribution facilities." If the proposed sale of electricity by PW Ventures is outside of PSC jurisdiction, the duplication of facilities could occur. What PW Ventures proposes is to go into an area served by a utility and take one of its major customers.[5] Under PW Ventures' interpretation, other ventures could enter into similar contracts with other high use industrial complexes on a one-to-one basis and drastically change the regulatory scheme in this state. The effect of this practice would be that revenue that otherwise would have gone to the regulated utilities which serve the affected areas would be diverted to unregulated producers. This revenue would have to be made up by the remaining customers of the regulated utilities since the fixed costs of the regulated systems would not have been reduced.
*284 We do not believe that Fletcher Properties v. Florida Public Service Commission, 356 So.2d 289 (Fla. 1978), mandates a different result. In that case, we did approve a PSC order which included reasoning to the effect that service to the public meant service to the indefinite public or to all individuals within a given area. However, the case did not arise in the context of a sale to a single customer. We simply affirmed the PSC's determination that the developer and owner of lines and lift stations who proposed to furnish water and sewer service to single family homes at the same rate as it was charged by the area water and sewer utility occupied the status of a public utility.[6]
The fact that the PSC would have no jurisdiction over the proposed generating facility if Pratt exercised its option under the letter of intent to buy the facility and elected to furnish its own power is irrelevant. The expertise and investment needed to build a power plant, coupled with economies of scale, would deter many individuals from producing power for themselves rather than simply purchasing it. The legislature determined that the protection of the public interest required only limiting competition in the sale of electric service, not a prohibition against self-generation.
We approve the decision of the Public Service Commission.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT and KOGAN, JJ., concur.
McDONALD, J., dissents with an opinion.
McDONALD, Justice, dissenting.
I dissent. In doing so, I accept the argument of PW Ventures, Inc. as set forth in its brief where it urges:
The cornerstone of "public utility" status and Commission jurisdiction under Chapter 366 is the provision of electric service "to the public". This phrase is not defined in Chapter 366, nor in any of the Commission's other jurisdictional statutes. Under Florida's rules of statutory construction, the phrase "to the public" must therefore be given either its plain and ordinary meaning or, if it is a legal term of art, its legal meaning. City of Tampa v. Thatcher Glass Corporation, 445 So.2d 578 (Fla. 1984); Citizens v. Florida Public Service Commission, 425 So.2d 534 (Fla. 1982); Tatzel v. State, 356 So.2d 787 (Fla. 1978); Ocasio v. Bureau of Crimes Compensation, 408 So.2d 751 (Fla. 3d DCA 1982). Under either test, a sale to a single industrial host in the circumstances of this case is not a sale "to the public."
* * * * * *
The phrase "to the public" commonly connotes the people as a whole, or at least a group of people. Webster's Ninth New Collegiate Dictionary (1983) gives two relevant definitions for "public":
2: the people as a whole: POPULACE
3: a group of people having common interests or characteristics: specif: the group at which a particular activity or enterprise aims
Black's Law Dictionary (Revised 4th ed.) similarly defines "public" to mean:
The whole body politic, or the aggregate of the citizens of a state, district, or municipality.... In one sense, everybody; and accordingly the body of the people at large; the community at large, without reference to the geographical limits of any corporation like a city, town, or county; the people. In another sense the word does not mean all the people, nor most of the people, nor very many of the people of a place, but so many as contradistinguishes them from a few.
Thus if Section 366.02(1) is given its plain and ordinary meaning, a person is not supplying electricity "to the public," if it supplies electricity only to a single *285 industrial customer on whose property the electric generating facility is located.
NOTES
[1] PW Ventures is a Florida corporation which was originally owned by FPL Energy Services, Inc. (a wholly owned subsidiary of FPL Group, Inc.) and Impell Corporation (a wholly owned subsidiary of Combustion Engineering, Inc.). After the entry of the PSC order, FPL Energy Services, Inc. transferred its 50% interest to Combustion Engineering, Inc.
[2] Cogeneration involves the use of steam power to produce electricity, with some of the energy from the steam being recaptured for further use. The PSC seeks only to regulate the sale of electrical power.
[3] The power would be used by Pratt and several affiliated corporate entities and by the Federal Aircraft Credit Union which is also located on the property.
[4] While the PSC reminds us that the power generated by the project will actually be passed on to several entities, we prefer to address the issue in the context argued by PW Ventures.
[5] Initially, Florida Power and Light had an interest in PW Ventures and would, in effect, transfer its own client to a subsidiary. FP & L is not now involved. Yet, if the argument of PW Ventures is accepted, there might be nothing to prevent one utility company from forming a subsidiary and raiding large industrial clients within areas served by another utility.
[6] The holding of that case actually supports the PSC's alternative position that PW Ventures will actually serve several customers at the Pratt facility.