Honorable F. Dennis Alvarez Chief Judge 13th Judicial Circuit
QUESTION: 1. Does a newspaper of general circulation constitute a "recognized organization" that may be permitted by the court to review juvenile dependency court records pursuant to s. 39.411(3), F.S. (1990 Supp.)? 2. Does the newspaper's research of juvenile dependency court statistics for reasons of publication constitute a "proper purpose" pursuant to s. 39.411(3), F.S. (1990 Supp.)?
SUMMARY: 1. A newspaper of general circulation may constitute a "recognized organization" that may be permitted by the court to review juvenile dependency court records pursuant to s. 39.411(3), F.S. (1990 Supp.). 2. A newspaper's review of such records for the purpose of compiling statistics for publication constitutes a "proper purpose" pursuant to s. 39.411(3), F.S. (1990 Supp.).
As your questions are interrelated, they will be answered together.
You state that you have received a request from The TampaTribune (the Tribune) to review certain juvenile court records relating to dependency cases pending between January 1, 1991, to February 15, 1991. The Tribune, however, has not requested any information concerning the identity of any child or of the child's siblings.
As you note, Ch. 39, F.S., places a strict obligation on the court to maintain the confidentiality of its files relating to juveniles.[1] Section 39.411(3), F.S. (1990 Supp.), provides:
 The clerk shall keep all court records required by this part separate from other records of the circuit court. All court records required by this part shall not be open to inspection by the public. All records shall be inspected only upon order of the court by persons deemed by the court to have a proper interest therein, except that, subject to the provisions of s. 63.162, a child and the parents or legal custodians of the child and their attorneys, law enforcement agencies, and the department and its designees shall always have the right to inspect and copy any official record pertaining to the child. The court may permit authorized representatives of recognized organizations compiling statistics for proper purposes to inspect and make abstracts from official records, under whatever conditions upon their use and disposition the court may deem proper, and may punish by contempt proceedings any violation of those conditions. (e.s.)
The language, authorizing a court to grant access to juvenile court records by recognized organizations compiling statistics for proper purposes, has not been judicially interpreted by the courts of this state.[2] Nor has my examination of the legislative history surrounding the enactment of the statute revealed any evidence of legislative intent on this issue.[3]
Where a statute does not specifically define words of common usage, such words must be given their plain and ordinary meaning.[4]
The word "organization" has been defined as "a state or manner of being organized: . . . the administrative and functional structure of an organization . . . including the established relationships of personnel through lines of authority and responsibility with delegated and assigned duties."[5]
The term "recognized" has generally been interpreted to mean "known; actual and publicly known."[6]
This office has been advised that the Tribune has been in existence since early in this century. It publishes a daily newspaper distributed throughout the state, and has in its employ reporters and editorial staff writers who are regularly engaged in the investigation and reporting of news-worthy matters. It would, therefore, appear to qualify as a "recognized organization." Section 39.411(3), F.S. (1990 Supp.), does not limit or restrict "recognized organizations" to those entities primarily concerned with the welfare of children and this office cannot supply or add words of limitation to the statute.[7]
However, in authorizing the court to permit recognized organizations access, the statute restricts access to thecompilation of statistics for proper purposes. Generally, the term "statistics" refers to the collection of quantitative data.[8]
It is a fundamental rule of statutory construction that the mention of one thing implies the exclusion of another.[9]
Therefore, access may be given only for the purpose of compiling statistics, i.e., the collection of quantitative data. Pursuant to s. 39.411(3), F.S., such access may be granted under whatever conditions upon their use and disposition the court may deem proper, and the court may punish by contempt proceedings any violation of those conditions.
Section 39.411(3), F.S. (1990 Supp.), does not define the phrase "proper purposes" although the term "proper" has been defined as "socially appropriate: according will established traditions and feelings of rightness and appropriateness."[10] The Tribune states that it seeks to examine the operation of the juvenile dependency system within the Thirteenth Judicial Circuit. It, therefore, wishes to inspect and make abstracts from juvenile dependency court records for the purpose of compiling certain statistics on dependency cases within the circuit.
The examination of the operation of government and the reporting of its findings by the news media is a well established and socially recognized tradition within this country. To the extent that the Tribune seeks to compile statistics from the juvenile dependency court records, such a compilation of statistics for publication would appear to be a proper purpose. Pursuant to s. 39.411(3), F.S. (1990 Supp.) the court, therefore, may permit the Tribune to inspect and make abstracts from its official records under whatever conditions it deems appropriate.
Thus, I am of the opinion that a newspaper of general circulation may constitute a "recognized organization" that may be permitted by the court under whatever conditions it deems appropriate to review juvenile dependency court records pursuant to s. 39.411(3), F.S. (1990 Supp.), for the purpose of compiling statistics. The newspaper's review of such records for the purpose of compiling statistics for publication relating to dependency court cases would appear to constitute a "proper purpose" pursuant to s. 39.411(3), F.S. (1990 Supp.).
RAB/tjw
[1] See, e.g., s. 39.411(4), F.S. (1990 Supp.), which provides:
All information obtained pursuant to this part [dependency cases] in the discharge of official duty by any judge, employee of the court, authorized agent of the department, correctional probation officer or law enforcement agent shall be confidential and exempt from the provisions of s. 119.07(1) and shall not be disclosed to anyone other than the authorized personnel of the court, the department and its designees, correctional probation officers, law enforcement agents, and others entitled under this chapter to receive that information, except upon order of the court. This exemption is subject to the Open Government Sunset Review Act in accordance with s. 119.14.
[2] Similar language was contained in s. 39.12, F.S. 1989, but does not appear to have been construed by the courts. Butsee, AGO 59-134 stating that the provisions of s. 39.12 permitted a judge in his discretion to allow a bona fide representative of the United States to inspect and make abstracts from the court's juvenile records under whatever conditions upon their use and disposition the judge deemed proper.
[3] The language in question was adopted in 1978 when s. 39.411, F.S., was created. See, s. 20, Ch. 78-414, Laws of Florida. Section 39.12, F.S. 1989, containing similar language, was adopted in 1951 by s. 1, Ch. 26880, 1951 Laws of Florida.
[4] See, Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984).
[5] Webster's Third New International DictionaryOrganization p. 1590 (unabridged ed. 1981).
[6] See, Black's Law Dictionary Recognized p. 1436 (4th rev. ed. 1968); 76 C.J.S. Recognized p. 104.
[7] See generally, Chaffee v. Miami Transfer Company, Inc., 288 So.2d 209 (Fla. 1974) (court in construing statute cannot invoke limitation or add words to statute not placed there by the Legislature).
[8] See, Webster's Third New International DictionaryStatistics p. 2230 (unabridged ed. 1981); The Random House Dictionary of the English Language Statistics p. 1389 (unabridged ed. 1968).
[9] See, e.g., PW Ventures, Inc. v. Nichols,533 So.2d 281 (Fla. 1988).
[10] Webster's Third New International DictionaryProper p. 1817 (unabridged ed. 1981).