WEBSTER, Judge.
Ebba Dampier (Dampier) appeals, and Raymond Beaty and others[1] (the Beaty group) cross appeal, a Final Order of the Department of Banking and Finance (Department) determining eligibility for, and the amount of, recovery from the Mortgage Brokerage Guaranty Fund (the Fund). We affirm in part, and remand for further proceedings.
The Fund was established as of September 1,1977. Ch. 77-397, § 10, Laws of Fla. Upon approval by the Division of Finance (Division), payments are to be made from the Fund, pursuant to the provisions of Section 494.044, Florida Statutes, “to any party to a mortgage financing transaction who is adjudged by a Florida court of competent jurisdiction to have suffered monetary damages as a result of any violation of [Chapter 494] committed by a licensee or registrant.” § 494.042(2), Fla.Stat. (1989).
To the extent relevant to discussion of the issues presented by this appeal, Section 494.044, Florida Statutes (1989), reads as follows:
(1) Any person who meets all of the conditions prescribed in s. 494.043 may apply to the [Department for payment to be made to such person from the ... Fund in the amount equal to the unsatisfied portion of that person’s judgment or judgments or $20,000, whichever is less, but only to the extent and amount reflected in the judgment as being actual or compensatory damages. As to claims against any one licensee or registrant, payments shall be made to all persons meeting the requirements of s. 494.043 upon the expiration of 2 years from the date the first complete and valid notice is received by the [Department. Persons who give notice after 2 years from the date the first complete and valid notice is received and who otherwise comply with the conditions precedent to recovery may recover from any remaining portion of the $100,000 aggregate, in an amount equal to the unsatisfied portion of that person’s judgment or $20,000, whichever is less, but only to the extent and amount reflected in the judgment as being actual or compensatory damages, with claims being paid in the order notice is received until the $100,000 aggregate has been fully disbursed.
(2) The claimant shall assign his right, title, and interest in the judgment, to the extent of his recovery from the [F]und, to the [Department and shall record, at his own expense, the assignment of judgment in every county where the judgment is recorded.
(3) Payments for claims shall be limited in the aggregate to $100,000, regardless of the number of claimants involved, against any one mortgage broker or registrant. If the total claims exceed the aggregate limit of $100,000, the [Department shall prorate the payment based on *1103 the ratio that the person’s claim bears to the total claims filed.
[[Image here]]
To the extent relevant to discussion of the issues presented by this appeal, Section 494.043, Florida Statutes (1989), reads as follows:
(1) Any person who was a party to a mortgage financing transaction shall be eligible to seek recovery from the ... Fund if:
(a) The person has recorded a final judgment issued by a Florida court of competent jurisdiction in any action wherein the cause of action was based on s. 494.042(2);
(b) The person has caused to be issued a writ of execution upon such judgment and the officer executing the same has made a return showing that no personal or real property of the judgment debtor liable to be levied upon in satisfaction of the judgment can be found or that the amount realized on the sale of the judgment debtor’s property pursuant to such execution was insufficient to satisfy the judgment;
(c) The person has made all reasonable searches and inquiries to ascertain whether the judgment debtor possesses real or personal property or other assets subject to being sold or applied in satisfaction of the judgment, and by his search he has discovered no property or assets or he has discovered property and assets and has taken all necessary action and proceedings for the application thereof to the judgment, but the amount thereby realized was insufficient to satisfy the judgment;
(d) The person has applied any amounts recovered from the judgment debtor, or from any other source, to the damages awarded by the court;
(e) The person, at the time the action was instituted, gave notice and provided a copy of the complaint to the [Division by certified mail ...; and
(f) The act for which recovery is sought occurred on or after September 1, 1977....
(2) The requirements of paragraphs (l)(a), (b), (c), (d), and (e) are not applicable if the licensee or registrant upon which the claim is sought has filed for bankruptcy or has been adjudicated bankrupt; however, in such event the claimant shall file a proof of claim in the bankruptcy proceedings and shall notify the [Department by certified mail of the claim by enclosing a copy of the proof of claim and all supporting documents.
On or about April 9, 1987, the Division received a letter from Dampier’s counsel, which letter read, “Pursuant to the provisions of Section 494.042 [sic ], Florida Statutes, I am enclosing a copy of the complaint of Ebba Dampier against Byron D. Beeler, a licensed mortgage broker.” The copy of the complaint referred to reflected that the original had been filed in the circuit court for Okaloosa County. (However, there was nothing to indicate when it had been filed.) The complaint alleged that Beeler “[held] himself out as a licensed mortgage broker and investment counsel-lor,” and that his office was in Okaloosa County. According to the complaint, Beeler had made certain “intentional or negligent misrepresentation^]” to Dampier to induce Dampier to make, or to participate in making, mortgage loans to third parties; Dampier made, or participated in making, the loans in reasonable reliance upon Beeler’s misrepresentations; and, as a result of Beeler’s misrepresentations, Dampier suffered damage.
On August 13, 1987, Beeler filed a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of Florida, Pensacola Division. (On Beeler’s motion, his bankruptcy proceeding was converted to a Chapter 7 case on July 20, 1988.) On January 14, 1988, Dampier’s counsel obtained an order from the bankruptcy court lifting the automatic stay, and allowing the action pending in the Okaloosa County circuit court to proceed. Dampier obtained a default final judgment against Beeler in the Okaloosa County action on September 29, 1988. The judgment awarded $37,403.19 in damages. On, or shortly after, October 18,1988, the Division received a letter from Dampier’s counsel, *1104 together with copies of the bankruptcy-court’s orders lifting the automatic stay and converting Beeler’s case to a Chapter 7, and the Okaloosa County circuit court’s final judgment (which had been recorded).
As the result of a telephone conversation on or about August 7, 1989, with an attorney employed by the Office of the Comptroller, on August 15, 1989, Dampier’s counsel caused to be issued a writ of execution for the Okaloosa County final judgment. After some initial difficulty obtaining the cooperation of the Walton County Sheriff, on November 8, 1989, the Sheriff made a return “NULLA BONA because no personal or real property of Byron D. Beeler, the judgment debtor, upon which levy could be made in satisfaction of the judgment can be found.” Copies of the writ of execution and the return were mailed by Dampier’s counsel to the Division, which received them on November 14, 1989.
While Dampier was attempting to perfect a claim, other claims were being made on account of the activities of Beeler.[2] On or about January 21, 1988, the Division received a claim from counsel for the Beaty group. This included a copy of a proof of claim in the aggregate amount of $122,-500.00, filed in the Beeler bankruptcy proceeding on or about December 21, 1987.[3] (However, the bankruptcy trustee objected to the Beaty group’s claim, and the objection was not resolved until January 17, 1990, when the bankruptcy judge overruled the objection and allowed the claim. A copy of this order was promptly sent to the Division.) On January 3,1989, the Division received a claim from an attorney representing Jasper Mask (Mask). This was supplemented on March 14, 1989, when the Division received from Mask’s counsel a copy of a proof of claim in the amount of $119,109.00, filed in the Beeler bankruptcy proceeding on November 2, 1987. Finally, on November 9, 1989, the Division received a claim from Robert D. and Anne M. Vin-sant. This claim was also accompanied by a copy of a proof of claim filed in the Beeler bankruptcy proceeding on or about September 6, 1988, in the amount of $20,-000.00.
On January 22, 1990, the Department issued its “Notice of Intent to Render a Final Order Granting and Denying Payment from the Mortgage Brokerage Guaranty Fund re Byron D. Beeler.” Dissatisfied with the Department's proposed disposition of the claims, several of the claimants filed petitions for a formal proceeding. A hearing officer was assigned and a hearing held, at which the only relevant evidence presented (for purposes of this appeal) consisted of the Department’s file. On August 21, 1990, the hearing officer issued her Recommended Order.
The Recommended Order is somewhat confusing because legal conclusions are lib *1105 erally commingled with the “Findings of Fact.” However, for purposes of this appeal, it is necessary to recite only that the hearing officer made the following findings: Beeler had been, at all relevant times, a licensed mortgage broker. The Division first received notice of Dampier’s claim “around April 9, 1987,” and learned that the amount of the judgment upon which Dampier’s claim was based was $37,-403.19 on October 18, 1988. The Division first received notice of the Beaty group’s claim “[o]n January 31, 1989.” (However, this date is clearly incorrect, as the correspondence in evidence establishes that the Division received the documents between January 21 and 26, 1988.) The materials received from the Beaty group included a copy of a proof of claim in the aggregate amount of $122,500.00 which had been filed in the Beeler bankruptcy proceeding; and which actually consisted of several separate claims. See note 3 supra. The Division first received notice of Mask’s claim on January 3,1989; and on March 14,1989, the Division received a copy of a proof of claim in the amount of $119,109.00, which had been filed in the Beeler bankruptcy proceeding. The Division first received notice of a claim by the Vinsants on November 9, 1989, when it received from the Vinsants numerous documents, including a copy of a proof of claim in the amount of $20,000.00, which had been filed in the Beeler bankruptcy proceeding. The transactions upon which the various claims were based had all occurred after September 1, 1977.
Ebba Dampier $20,000.00
Jasper Mask $20,000.00
Raymond Beaty $20,000.00
Phillip and Mary Crowder (as Trustees for James Crowder) $ 8,000.00
Phillip and Mary Crowder (as Trustees for Deborah Crowder) $ 4,000.00
Cecil D. and Diane M. Youmans $15,000.00
Glenn E. and Alice L. Hunt $15,000.00
Obe D. and Virginia K. Coleman $10,000.00
Barbara Spencer $20,000.00
Nancy Scrivner $15,000.00
The hearing officer concluded that all of the claimants had satisfied the “conditions precedent” to recovery required by Section 494.043, Florida Statutes (1989). She then concluded that the letter and copy of the complaint which the Division had received from Dampier’s counsel “around April 9, 1987,” constituted “the first complete and valid notice” of a claim, as that term is used in Section 494.044(1), Florida Statutes (1989). Next, she concluded that all of the claims except that of the Vinsants had been made within two years of April 9, 1987. Therefore, all except the Vinsants fell within what the hearing officer referred to as “the preferred group of claimants.” Because the Vinsants had not given notice of their claim within two years of April 9, 1987, the hearing officer concluded that, pursuant to Section 494.044(1), “[t]he Vin-sants may only receive payment from the Fund if there is money left after the preferred group of claimants are paid.”
Construing Section 494.044, the hearing officer concluded that the word “claim” as used in that Section was intended to refer to the amount one can “claim” from the Fund, i.e., “the amount equal to the unsatisfied portion of that person’s judgment or judgments or $20,000, whichever is less....” § 494.044(a), Fla.Stat. (1989). Having reached this conclusion, the hearing officer then determined the amount of the “claim” of each member of “the preferred group of claimants,” as follows:
*1106 The aggregate of the individual “claims” of the members of “the preferred group of claimants” was $147,000.00. Therefore, the hearing officer looked to Section 494.-044(3), which reads:
Payments for claims shall be limited in the aggregate to $100,000, regardless of the number of claimants involved, against any one mortgage broker or registrant. If the total claims exceed the aggregate limit of $100,000, the [Department shall prorate the payment based on the ratio that the person’s claim bears to the total claims filed.
Applying the formula contained in Section 494.044(3), the hearing officer arrived at the following prorated payment figures for the “claims” of the members of “the preferred group of claimants”:
Ebba Dampier $13,605.44
Jasper Mask $13,605.44
Raymond Beaty $13,605.44
Phillip and Mary Crowder (as Trustees for James Crowder) $ 5,442.18
Phillip and Mary Crowder (as Trustees for Deborah Crowder) $ 2,721.09
Cecil D. and Diane M. Youmans $10,204.08
Glenn E. and Alice L. Hunt $10,204.08
Obe D. and Virginia K. Coleman $ 6,802.73
Barbara Spencer $13,605.44
Nancy Scrivner $10,204.08
These are the amounts which the hearing officer recommended that each member of “the preferred group of claimants” be paid from the Fund. Because such payments would exhaust the $100,000.00 aggregate available, the hearing officer also recommended that the Vinsants’ claim be denied.
On November 19, 1990, the Department issued its Final Order. The Final Order rejected all exceptions to the Recommended Order and, with one minor “modification” not relevant to the issues raised on this appeal, adopted all of the hearing officer’s findings of fact and conclusions of law. In particular, the Final Order expressly “concurs” with the statutory construction based upon which the hearing officer arrived at the amount that she recommended each claimant be paid from the Fund. The Final Order directs that each member of what the hearing officer had referred to as “the preferred group of claimants” be paid the amount recommended by the hearing officer; and denies the Vinsants’ claim.[4]
On appeal, Dampier takes issue with the statutory construction based upon which the hearing officer arrived at the amount that she recommended each claimant be paid from the Fund. She argues that, according to what she claims to be the proper interpretation of the relevant statutory provisions, all of the payments recommended by the hearing officer are incorrect; and, in particular, that she should receive $18,712.98, rather than $13,605.44. By its cross appeal, the Beaty group argues that Dampier is not entitled to any recovery from the Fund because she did not satisfy the required conditions precedent set out in Section 494.043. The issues presented by Dampier and the Beaty group were raised during the administrative process and, therefore, have been preserved for our review.
Dampier argues, with considerable vigor, that the statutory construction based upon which the hearing officer arrived at the amount that she recommended each claimant be paid from the Fund was in error. According to Dampier, “[t]he basic error made by the hearing officer and the [D]e- *1107 partment was to confuse the ‘claim’ referred to in the statute with the maximum payment to one individual. The claim that is asserted is for the full damage sustained.” Therefore, so the argument goes, the total “full damage sustained” by the claimants (regardless of whether or not any one claimant’s “full damage sustained” exceeds $20,000.00) must be aggregated and, if that sum exceeds $100,000.00, then the prorated payments are determined by the ratio that each individual claimant’s “full damage sustained” bears to the aggregate “full damage sustained” by all claimants. Because of what Dampier refers to as “the $20,000.00 cap on one claim,” however, if any of the prorated payments arrived at by the foregoing method exceed $20,000.00, “the $20,000.00 cap” is applied and then deducted from the $100,000.00 aggregate available; the amount(s) of “full damage sustained” by each such claimant is (are) deducted from the aggregate “full damage sustained” by all claimants; a new ratio is calculated; and that new ratio is applied to the “full damage sustained” by each remaining claimant to determine the prorated payment to which each remaining claimant is entitled.
We disagree with Dampier’s argument for two reasons. First, in its Final Order, the Department expressly agreed with the statutory construction based upon which the hearing officer had arrived at the amount that she recommended each claimant be paid from the Fund. “[A]dministra-tive agencies are afforded wide discretion in interpreting statutes which they administer. An agency’s statutory construction is entitled to great weight and is not to be overturned on appeal, unless clearly erroneous.” Braman Cadillac, Inc. v. Department of Highway Safety and Motor Vehicles, 584 So.2d 1047, 1050 (Fla. 1st DCA 1991). Accord PW Ventures, Inc. v. Nichols, 533 So.2d 281 (Fla.1988); Shell Harbor Group, Inc. v. Department of Business Regulation, 487 So.2d 1141 (Fla. 1st DCA 1986). Here, the Department is charged with administering Chapter 494 in general, and the Fund in particular. We discern nothing about any aspect of the hearing officer’s construction of the relevant portions of Chapter 494 (which construction the Department expressly adopted) which remotely qualifies as “clearly erroneous.”
Second, applying established rules of statutory construction, we arrive at the same conclusion as did the hearing officer. As Dampier correctly points out, the word “claim,” as used in Section 494.044, is not defined. However, “claim” is a commonly-used word. “Where a statute does not specifically define words of common usage, such words must be given their plain and ordinary meaning.” Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla.1984). The most common dictionary definition of the noun “claim” is “a demand for something as due; an assertion of a right or an alleged right.” The Random House Dictionary of the English Language 379 (2d ed., unabridged). Accord III The Oxford English Dictionary 261 (2d ed.); Webster’s Third New International Dictionary of the English Language 414 (unabridged). It is apparent that this is precisely the sense in which “claim,” as used in Section 494.044, is intended to be read. It is, moreover, clear that the “something ... due,” “the right or ... alleged right,” is “the amount equal to the unsatisfied portion of [the] person’s judgment or judgments or $20,000, whichever is less,” which language is found in Section 494.-044(1). In other words, “claim” means the amount which a person may “demand” from the Fund; and that amount is “equal to the unsatisfied portion of that person’s judgment or judgments or $20,000, whichever is less.” Having started with the correct figures for the “claims,” the results of the hearing officer’s computations were, in our opinion, correct.
The Beaty group argues, likewise with vigor, that Dampier is not entitled to any recovery from the Fund because she did not satisfy the required conditions precedent set out in Section 494.043; and that the hearing officer’s conclusion that Dam-pier had met “all the criteria established in Section 494.043” and had, therefore, “perfected” her claim, was erroneous as a mat *1108 ter of law. The Beaty group contends that Dampier failed to comply with Section 494.-043 because subsection (2) of that Section affords the only procedure by which to perfect a claim once the licensee has filed for bankruptcy; and, despite the fact that Beeler had filed for bankruptcy, Dampier made no attempt to comply with subsection (2). Alternatively, the Beaty group argues that, even if Dampier was legally entitled to continue to rely for perfection of her claim upon subsection (1) after Beeler had filed for bankruptcy, Dampier failed to satisfy subsections (l)(a) and (d) because the Okaloosa County circuit court action had not been based upon Section 494.042(2), and because Dampier failed “to prove that she applied any amounts recovered from the judgment debtor, or any other sources, to the damages awarded by the court,” respectively. Although raised below, the hearing officer did not address these arguments directly. However, the ultimate result recommended clearly implies that the arguments were rejected. We are left to conjecture regarding the hearing officer’s reason or reasons for rejecting the arguments.
The first sentence of Section 494.-044(1) establishes that one may not apply for payment from the Fund unless he or she “meets all of the conditions prescribed in s. 494.043.” In addition, Section 494.043 is headed “Conditions precedent for recovery.” Accordingly, it is clear that one seeking payment from the Fund of a claim must first comply with Section 494.043.
Dampier argues that subsections (1) and (2) of Section 494.043 afford alternative means by which one may perfect a claim. According to her, nothing in that Section prohibited her from continuing her efforts to perfect her claim pursuant to subsection (1) when Beeler filed for bankruptcy after she had sued Beeler and sent notice of the action to the Division, as required by subsection (l)(e). Her position is that she satisfied all of the requirements of subsection (1), and that that is all she was obligated to do.
We have little trouble disposing of the Beaty group’s arguments that Dampier did not even meet the requirements of subsection (1). It is true that Dampier’s complaint in the Okaloosa County action did not specifically cite that it “was based on s. 494.042(2)” (or, for that matter, on any other provisions of Chapter 494). However, the hearing officer concluded that, although the complaint contained no express reference to Chapter 494, the conduct of Beeler which was alleged to have resulted in damage was clearly proscribed under numerous provisions of Chapter 494, and that that was sufficient to satisfy Section 494.043(l)(a). We agree. The Beaty group also argues that Dampier failed to prove that she “ha[d] applied any amounts recovered from the judgment debtor, or from any other source,' to the damages awarded by the court,” as required by subsection (l)(d). However, there was no evidence that Dampier had recovered anything from Beeler, or from anyone else on Beeler’s behalf. (On the contrary, the writ of execution was returned “NULLA BONA.”) Therefore, there was nothing for Dampier to prove pursuant to subsection (l)(d).
The Beaty group’s argument that, once Beeler filed for bankruptcy, a claim could be perfected only by compliance with Section 494.043(2), presents a significantly more substantial issue. The essence of Dampier’s response to this argument is that, “[sjurely if the legislature meant to require the injured party to drop the suit seeking a final judgment and to start all over with the filing of a proof of claim in the bankruptcy proceedings, it would have specifically stated that.” We agree. However, it appears to us that the legislature did precisely that. Section 494.043(2) reads:
The requirements of paragraphs (l)(a), (b), (c), (d), and (e) are not applicable if the licensee or registrant upon which the claim is sought has filed for bankruptcy or has been adjudicated bankrupt; however, in such event the claimant shall file a proof of claim in the bankruptcy proceedings and shall notify the [Department by certified mail of the claim by enclosing a copy of the *1109 proof of claim and all supporting documents.
(Emphasis added.) We fail to see anything unclear or ambiguous about the language used in subsection (2). To us, it appears to be susceptible to but one interpretation — if the licensee or registrant whose conduct is the basis for the claim files for bankruptcy, or is adjudicated a bankrupt, the claimant must file a proof of claim in the bankruptcy court and notify the Department of the claim by certified mail, enclosing a copy of the proof of claim and all supporting documents; in such circumstances, the procedures found in subsection (1) become unavailable. “Where language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resort to the rules of statutory construction or interpretation. The statute must be given its plain and obvious meaning.” Bewick v. State, 501 So.2d 72, 73 (Fla. 5th DCA 1987).
Because Beeler filed for bankruptcy, in order to perfect her claim Dampier was required, pursuant to Section 494.043(2), to “file a proof of claim in the bankruptcy proceedings and [to] notify the [Department by certified mail of the claim by enclosing a copy of the proof of claim and all supporting documents.” Although the briefs of the parties and the record on appeal strongly suggest that Dampier did not do these things, the hearing officer made no findings one way or the other in that regard. We can only assume that no findings were made because the hearing officer disagreed with the Beaty group’s legal argument that Dampier could perfect her claim only by complying with Section 494.043(2), and, therefore, concluded that there was no reason to make such findings. Accordingly, as to this issue, we must remand to the Department with directions that it, in turn, remand to the hearing officer, for further proceedings consistent with this opinion.
In summary, we affirm on the issue of construction of Section 494.044, raised by the appeal; and remand for further proceedings consistent with this opinion on the issue of Dampier’s right to any recovery from the Fund, raised by the cross appeal.
AFFIRMED IN PART, and REMANDED, with directions.
ALLEN, J., concurs.
KAHN, J., dissents and concurs with opinion.

. Phillip and Mary Crowder, as Trustees for James Crowder; Phillip and Mary Crowder, as Trustees for Deborah Crowder; Cecil D. and Diane M. Youmans; Glenn E. and Alice L. Hunt; Obe D. and Virginia K. Coleman; Barbara Spencer; and Nancy Scrivner.

. Beeler’s license as a mortgage broker was suspended indefinitely on February 3, 1987. On February 4, 1987, the State filed a civil complaint in Okaloosa County circuit court, accusing Beeler of fraudulent practices in violation of the Florida Securities and Investor Protection Act (Ch. 517, Fla.Stat.) and the Mortgage Brokerage Act (Ch. 494, Fla.Stat.), and requesting an injunction and appointment of a receiver. A Temporary Injunction and Order Appointing Receiver was entered on the next day and, ultimately, affirmed on appeal. State v. Beeler, 530 So.2d 932 (Fla.1988), rev'g, 513 So.2d 710 (Fla. 1st DCA 1987). On July 17, 1989, pursuant to a jury verdict, Beeler was convicted of some 40 felonies, including securities fraud, grand theft and racketeering, and sentenced to a total of 25 years in prison. State v. Beeler, Case No. 88-676-CF (Cir.Ct., Okaloosa Cty., Fla.), aff'd mem., 576 So.2d 1320 (Fla. 1st DCA 1991).

. The aggregate amount was the sum of the following separate claims:
Raymond Beaty $30,500.00
Phillip and Mary Crowder (as Trustees for James Crowder) $ 8,000.00
Phillip and Mary Crowder (as Trustees for Deborah Crowder) $ 4,000.00
Cecil D. and Diane M. Youmans $15,000.00
Glenn E. and Alice L. Hunt $15,000.00
Obe D. and Virginia K. Coleman $10,000.00
Barbara Spencer $25,000.00
Nancy Scrivner $15,000.00

. The Vinsants have not sought review in this court of the denial of their claim. Therefore, we express no opinion as to the soundness of the decision reached as to that claim.