666 So.2d 1003 (1996)
LEON COUNTY, Appellant,
v.
STATE of Florida, DEPARTMENT OF COMMUNITY AFFAIRS, Texaco Trading and Transportation, Inc., and Colonial Pipeline Company, Appellees.
No. 93-2551.
District Court of Appeal of Florida, First District.
January 23, 1996.
Herbert W.A. Thiele, Leon County Attorney, Tallahassee, C. Laurence Keesey, Tallahassee, and William L. Anderson, Washington, D.C., for Appellant.
Richard S. Brightman and Elizabeth C. Bowman, Tallahassee, for Appellee Colonial Pipeline Company.
Sherry A. Spiers, Assistant General Counsel, Tallahassee, for Appellee State of Florida Department of Community Affairs.
PER CURIAM.
Leon County appeals the final agency decision of the Department of Community Affairs ("DCA"), concluding that developers of a pipeline and its petroleum storage facility were not required to obtain a binding letter of interpretation because the developments, both separately and combined, were not subject to development-of-regional-impact ("DRI") review under chapter 380, Florida Statutes (1991). We agree and affirm.
Texaco Trading and Transportation Co. ("Texaco"), plans to construct a petroleum storage and tanker loading facility in Lloyd, Jefferson County, Florida. The total capacity of the proposed storage facility is 155,964 barrels. Rackleff, et. al. v. Dept of Community Affairs, (DOAH case no. 89-6100R, January 4, 1990).[1] To supply the storage facility, Colonial Pipeline Company ("Colonial"), plans to build a 45-mile petroleum pipeline from Bainbridge, Georgia, to Lloyd. In Florida, the pipeline will be confined to Jefferson County and will be approximately 22 miles in length.
On May 26, 1993, Leon County petitioned the DCA under section 380.06(4)(c), Florida Statutes (1991), to require Colonial to obtain a binding letter of interpretation regarding the DRI status of the pipeline itself and/or of *1004 the pipeline in conjunction with the storage facility. Specifically, the petition asserted that both the proposed pipeline and the storage facility met the statutory definition of a "DRI" as set forth in section 380.06(1), Florida Statutes (1991). The petition also stated that the pipeline, as an "industrial" or "distribution facility" under section 380.0651(3)(c), Florida Statutes (1991), in combination with the storage facility under rule 28-24.021, Florida Administrative Code, met the minimum numerical threshold requirements under the DRI guidelines and standards for a "multi-use development" under section 380.0651(3)(i), Florida Statutes (1991). The Apalachee Regional Planning Council ("ARPC") also requested a binding letter of review for the project, essentially making the same arguments.
In a response to the requests, Colonial delivered a letter to the DCA stating, among other things, that Leon County had no authority to request a binding letter; that the definition section of chapter 380, i.e., section 380.06(1), was not self-executing; that the DCA could not require a DRI review of projects that were not DRIs under the guidelines and standards; that the pipeline project was not an industrial use; and that the pipeline and storage facility combined was not a DRI under the multi-use threshold.
On July 19, 1993, the DCA issued a response/final order rejecting Leon County's and ARPC's requests. The DCA relied on both its longstanding and often expressed interpretation of the guidelines and standards and Rackleff, supra, to determine that the pipeline was not included in the statutory guidelines and standards and therefore was not subject to DRI review. The DCA reasoned that pipelines are not specifically identified in the guidelines and standards of section 380.0651 and chapter 28-24, Florida Administrative Code, as a type of development which may be subject to DRI review and explained that for nearly the last twenty years, since their original enactment, it has interpreted the guidelines and standards as not including pipelines. Further, the DCA found that the storage facility, by itself, was to be constructed at less than 80 percent of the applicable numerical threshold for petroleum storage facilities. As such, under section 380.06(2)(d)1.a., Florida Statutes (1991), it was not required to undergo DRI review. The DCA rejected Leon County's assertion that the pipeline and storage facility together were subject to DRI review under the multi-use doctrine. In sum, the DCA determined that it lacked authority to require the developers to obtain binding letters for the project under section 380.06(4) because the pipeline and the storage facility, either separately or combined, were not subject to DRI review. This appeal followed.
It is well established that the contemporaneous construction of a statute by the agency charged with its enforcement and interpretation is entitled to great weight. PW Ventures, Inc. v. Nichols, 533 So.2d 281, 283 (Fla. 1988). The courts will not depart from such a construction unless it is clearly unauthorized or erroneous. PW Ventures, Inc. v. Nichols, supra; AMISUB v. Dept of Health and Rehabilitative Services, 577 So.2d 648 (Fla. 1st DCA 1991). As to Texaco's component of the project, the DCA's finding that the storage facility by itself was not subject to DRI review was not clearly erroneous. "Petroleum storage facility" is a development specifically listed under the guidelines and standards of chapter 28-24, Florida Administrative Code, and as result, the numerical thresholds of section 380.06(2)(d) apply. Texaco has asserted that the facility would only store 155,964 barrels, which is approximately 78 percent of the applicable numerical threshold for petroleum storage facilities. Since the facility is below 80 percent of the numerical threshold, under section 380.06(2)(d)1.a. the storage facility is not required to undergo DRI review. Thus, we affirm that part of DCA's order.
As for the pipeline or the pipeline in combination with the storage facility, the DCA's reading of subsections 380.06(1) and (2) together and in conjunction with section 380.0651 to determine which developments may be required to undergo development-of-regional-impact review, and its conclusion that the pipeline (alone or in combination) is not subject to such review, is also not clearly erroneous. Indeed, this reasonable interpretation comports with the oft-recognized rule *1005 that a specific section of an act comprehending an entire subject matter does not stand alone; rather, related provisions must be given full effect, and construed in harmony with one another when possible. See Florida Cable Television Assoc. v. Deason, 635 So.2d 14 (Fla. 1994) and Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992) ("It is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole... . courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another"); In re Opinion to the Governor, 60 So.2d 321, 324 (Fla. 1952) ("it is a cardinal rule of statutory construction that in respect to an act comprehending a whole subject matter no specific section will necessarily stand alone; and where a section refers to some other section or sections, or where some other section or sections may be applicable to a specific section, all must be considered and construed together ..."). This is not a case in which omission of this project from development of regional impact review will allow it to proceed without regulation. Rather, the issue in this case is simply whether the agency acted unreasonably or arbitrarily in determining that it lacked the authority to require the developers to obtain binding letters of interpretation under the development of regional impact statute. Concern over the potential magnitude of a possible environmental disaster does not justify ignoring well established rules of law. Indeed, any project such as this will be subjected to a plethora of regulations and environmental protection statutes, whether or not it is considered a development of regional impact under section 380.06, Florida Statutes. The appellant conceded in the initial brief that a variety of federal and state permits would be required for this project.
Although section 380.06(1) broadly defines "development of regional impact," the DCA did not act unreasonably in concluding that the "statewide guidelines and standards" referred to in section 380.06(2) directly modify that definition, thereby limiting the projects which may be required to undergo development-of-regional-impact review. The "guidelines and standards" incorporated by reference in section 380.06(2) are contained in section 380.0651. That statute lists the developments which may be required to undergo development-of-regional-impact review when the numerical guidelines set forth therein are satisfied. A pipeline, such as the one in dispute in this case, is not a listed development. Nor does it remotely resemble any of the listed developments. The Department of Community Affairs reached the eminently reasonable conclusion that the pipeline could not be required to undergo development-of-regional-impact review, and this Court should defer to that interpretation of these statutes. Thus we also affirm the remainder of the order concluding that the pipeline is not a development of regional impact.
AFFIRMED.
ZEHMER, C.J., and DAVIS, J., concur.
BOOTH, J., dissenting with written opinion.
BOOTH, Judge, dissenting.
Appellee Department's ruling might be characterized as "WE DON'T DO PIPELINES." I would reject this ruling as not supported by the statutes and contrary to the intent of the Legislature in its enactment of chapter 380, Florida Statutes.[2]
Specifically with regard to DRIs, the statutory purpose is to ensure that the regional impacts of development are "considered and ameliorated."[3] In keeping with this purpose, the Legislature has provided a definition *1006 of a DRI[4] and provided that a local government may petition for DRI review of a development located in an adjacent county, as was done here.[5]
Appellee Department is the only agency empowered to "consider and ameliorate" the regional impact of a development in the planning stages. This agency alone has the jurisdiction to REVIEW the matter and to protect vital environmental health and safety interests of a large number of citizens where the development impacts more than one county in the state. It is not the intent of the statute that we wait until a ruptured pipeline or tank damages the aquifer or the adjacent wetlands and water bodies and demonstrates how difficult and expensive, if not impossible, it is to restore these vital natural resources.
The development in question here is a pipeline 22 miles long within Jefferson County, and a Texaco terminal consisting of five storage tanks having a total combined capacity of 6,657,000 gallons (158,500 barrels) of petroleum product.[6] The development also includes a three-bay automated loading rack that will service, by Texaco's own estimate, 80 transport trucks each day carrying 640,000 gallons (approximately 15,238 barrels) of petroleum product.
These facts indicate a development of significant size involving the storage and transportation of large quantities of a hazardous substance. Further, the site of the pipeline and tank farm is over the Floridan Aquifer just east of the Leon County line.
The Department's order further finds that the proposed pipeline corridor would be located over or near a number of water bodies, such as Wards Creek, Lake Miccosukee and Lake Drain, which are interconnected by sinks, streams, creeks and wetlands. During high water some of these streams drain into the St. Marks River, a designated Outstanding Florida Water. The pipeline corridor is proposed to be located in an area designated in the Jefferson County Comprehensive Plan as a "high water recharge area" for the Floridan Aquifer.[7]
The Floridan Aquifer is the source of drinking water for a large area, including Jefferson and Leon Counties. The Department of Natural Resources[8] has advised Leon County that a spill of only 200 to 500 gallons at Ward's Creek will drop all of Lake Miccosukee below drinking water standards, and that a spill at Lake Drain will result in direct contamination of the Floridan Aquifer. Despite the foregoing findings, the Department denied review based on its lack of jurisdiction.
I would reverse and remand. The development is clearly reviewable under Chapter 380. The Department's interpretation denying jurisdiction of this development distorts the meaning and purpose of the statutes in question and should be rejected by this court.[9]
The Florida Environmental Land and Water Management Act[10] was enacted to protect and preserve the natural resources and environment of this state, an exercise of the *1007 police power. § 380.021, Fla. Stat. Subsection (1) of section 380.06 sets out the definition of developments of regional impact; subsection (2) provides for statewide guidelines and standards "to be used in determining whether particular developments shall undergo development-of-regional-impact review." § 380.06(2)(a) (emphasis added). To date, some fourteen types of developments have been identified by statute and rule with guidelines and standards. § 380.0651, Fla. Stat.; Chapter 28-24, Fla. Admin. Code. The Department has ruled that since pipelines are not listed, it is without jurisdiction.
The purpose of Florida Statutes sections 380.06(2) and 380.0651(3) is to facilitate regulation of the particular developments listed. The Legislature has not undertaken to list all projects that are potentially subject to DRI review. On the contrary, the preface to the guidelines and standards list, section 380.0651(3), Florida Statutes, is:
"The following statewide guidelines and standards shall be applied in the manner described in s. 380.06(2) to determine whether the following developments shall be required to undergo development-of-regional-impact review: ... ." [Emphasis added.]
The plain meaning is, simply, that guidelines and standards apply only to the developments listed. No further limitation is expressed and none should be implied.
Had the Legislature intended that only the listed developments be subject to DRI review, it would have been a simple matter to add words of limitation such as "Only these developments will be subject to review," or "DRI review will be limited to the developments listed," or more to the point, that "Pipelines shall be exempted from DRI review." Instead, the Legislature has given the Department a perfectly good definition of a DRI in section 380.06(1) with the intent that the agency apply that definition. So that there is no mistake, only subsection (1) of section 380.06 is entitled "Definition."
As it stands, the listed projects are governed by the guidelines and standards; the unlisted are not. Projects not assigned numerical thresholds are subject to regulation if they meet the statutory definition for DRI review of section 380.06(1), Florida Statutes. The guidelines and standards allow early identification and speeds determination of DRI status of listed developments. Categories of development frequently involved in the DRI process, such as "Residential," are included in this list. The intent was to "streamline and clarify" the DRI process. By eliminating some of the delay and uncertainty, it was hoped that developer participation would be encouraged.[11]
There is nothing in the legislative history or in the statutes themselves to suggest that the statutory list excludes other types of developments from DRI review. On the contrary, the operative word is "include." The staff analysis to the 1985 amendments states, "Developments of Regional Impact INCLUDE the largest developments in 12 categories of development presumed to be of regional impact (chapter 27F-2, Florida Administrative Code) [now chapter 28-24, Florida Administrative Code]." (Emphasis added.)[12]
The correct interpretation of these statutes is one that gives effect to both subsections of section 380.06, as well as to section 380.0651, in the context of the whole purpose of the Act. Under the legal maxim "ut res magis valeat quam pereat," significance and effect should be given to each provision of and to the whole statute. The law favors a construction that gives effect to every clause and part of the statute in keeping with the general policy that dictated its enactment. 49 Fla.Jur.2d Statutes, section 179.
I would reverse and remand with directions that Appellee Department afford DRI review.
NOTES
[1] This order has not been appealed.
[2] Florida Statutes section 380.021 states, in part, as follows:

Purpose.  It is the legislative intent that, in order to protect the natural resources and environment of this state as provided in s. 7, Art. II of the State Constitution, ensure a water management system that will reverse the deterioration of water quality and provide optimum utilization of our limited water resources, facilitate orderly and well-planned development, and protect the health, welfare, safety, and quality of life of the residents of this state, it is necessary adequately to plan for and guide growth and development within this state.
[3] Pelham, Environmental and Land Use Law, Fla.Bar Journal 51, 52 (1982).
[4] Florida Statutes section 380.06 states, in part, as follows:

(1) DEFINITION.  The term "development of regional impact," as used in this section, means any development which, because of its character, magnitude, or location, would have a substantial effect upon the health, safety, or welfare of citizens of more than one county.
[5] Florida Statutes section 380.06(4)(c).
[6] The record does not reveal the volume capacity of the pipeline itself, but this must be considered along with the capacity of the tanks and the transport trucks to determine the total amount of hazardous substance potentially stored and transported at or near the proposed site.
[7] A "high water recharge area" is one in which the Floridan Aquifer lies near or at the surface; the soils are sandy, having a high infiltration capacity; and the confining beds are generally very thin to absent and/or highly discontinuous.
[8] Now "Department of Environmental Protection," Laws of Florida 93-213, § 8.
[9] The court must avoid a construction leading to an absurd or unreasonable result when the statute, considered as a whole, is fairly subject to another interpretation that will aid in accomplishing the legislative intent. 49 Fla.Jur.2d, Statutes § 183, 185, and cases cited therein.
[10] The Florida Act is based on Model Land Development Code, section 7. Fla.Bar Journal, June 1981 at page 459.
[11] Senate Staff Analysis and Economic Impact Statement of House Bill 287 submitted by the House of Representatives Natural Resources Committee, dated May 29, 1985, revised June 10, 1985.
[12] Ibid.