408 So.2d 751 (1982)
Caridad OCASIO, Appellant,
v.
BUREAU OF CRIMES COMPENSATION DIVISION OF WORKERS' COMPENSATION, Appellee.
No. 81-693.
District Court of Appeal of Florida, Third District.
January 12, 1982.
Jon W. Burke and Linda Dakis, Miami, for appellant.
Robert Mack, Tallahassee, for appellee.
Before SCHWARTZ, BASKIN and DANIEL S. PEARSON, JJ.
SCHWARTZ, Judge.
Mrs. Caridad Ocasio had filed a dissolution proceeding and was living apart from her husband when he attacked her and repeatedly slashed her face with a razor.[1] She filed a claim under the Florida Crimes Compensation Act to recover the resulting lost earnings and medical expenses. Following a hearing held pursuant to Section 960.09(3), Florida Statutes (Supp. 1980), the deputy commissioner rejected the claim on the sole ground that, because they were still formally married at the time, Mrs. Ocasio was related by "affinity to the person who committed the crime" and was therefore ineligible for an award by virtue of Section 960.04(2)(c) Florida Statutes (1979). She appeals and we reverse.
Section 960.04 provides in its entirety:

*752 960.04 Eligibility for awards. 
(1) Except as provided in subsection (2), the following persons shall be eligible for awards pursuant to this section:
(a) A victim.
(b) An intervenor.
(c) A surviving spouse, parent, or child of a deceased victim or intervenor.
(d) Any other person who is dependent for his principal support upon a deceased victim or intervenor.
(e) A dependent child of a deceased victim of a crime who is related to or residing in the same household as the person who committed the crime.
(2) Any person who:
(a) Committed or aided in the commission of the crime upon which the claim was based;
(b) Was engaged in an unlawful activity at the time of the crime upon which the claim is based;
(c) Is related within the third degree of consanguinity or affinity to the person who committed the crime, except as provided in paragraph (1)(e);
(d) Is maintaining a sexual relationship with the person who committed the crime; or
(e) Resides in the same household as the person who committed the crime, except as provided in paragraph (1)(e),
shall not be eligible to receive an award with respect to such claim.
We think it very clear that the present claim is not barred by this statutory provision.
The question on which the case turns boils down to whether the term "affinity" in Section 960.04(2)(c) includes the interspousal relationship.[2] It is conceded that, in Florida and elsewhere, the term has historically and universally been considered to refer only to a relationship with the blood relatives of one's spouse and specifically does not embrace that between husband and wife themselves. In State ex rel. Perez v. Wall, 41 Fla. 463, 26 So. 1020, 1021 (1899), our supreme court stated:
We do not think it can be maintained that a husband is related to his wife by affinity. They are embraced in the definition of neither affinity nor consanguinity, but are regarded in law ... as one person.
Accord, Ex parte Harris, 26 Fla. 77, 7 So. 1 (1890); State v. Hooper, 140 Kan. 481, 37 P.2d 52 (1934). The appellee points out, however, that, as Wall states, this view was based on the notion that husband and wife were, in legal contemplation, the same person who therefore could not be "related" to each other by affinity or otherwise. Since this attitude is no longer a viable part of the law, it is argued  and the deputy, in a thoughtful order, agreed below  that the term must be given a correspondingly new and modern interpretation.[3] In our view, this approach misses the mark entirely. The issue is not whether spouses are any longer correctly regarded as a single individual; obviously, they are not.[4] Rather, it is what the legislature meant and intended when it employed the particular expression in the present statutory context. State v. Gale Distributors, Inc., 349 So.2d 150 (Fla. 1977). On this point, the controlling principle is that technical legal words, such as "affinity," are deemed to have been statutorily used as they are legally defined. Davis v. Strople, 39 So.2d 468 (Fla. 1949); see *753 Variety Children's Hospital, Inc. v. Perkins, 382 So.2d 331, 337-38 (Fla. 3d DCA 1980). As is said in 30 Fla.Jur. Statutes § 98 (1974):
Technical words and phrases that have acquired a peculiar and appropriate meaning in law cannot be presumed to have been used by the legislature in a loose popular sense. To the contrary, they have been presumed to have been used according to their legal meaning. They will ordinarily be interpreted not in their popular, but in their fixed legal, sense and with regard to the limitations the law attaches to them. Where legal terms are used in a statute, unless a plainly contrary intention is shown they must receive their technical meaning.
This principle is clearly applicable here.
Furthermore, two additional factors make it even clearer that the accepted definition of affinity, which excludes spouses, must be applied to Section 960.04(2)(c). First, it is to be noted that the subsection refers to a relation "within the third degree of... affinity" [e.s.] with the criminal. But it is inherently impossible for a husband to bear any particular "degree" of affinity (first?, second?) to his wife.[5] As in the Perkins case, supra, 382 So.2d at 337-38, therefore, the legislature's very use of the arcane nomenclature in question itself signals the unacceptability of the appellee's interpretation of the statute. Perhaps more important is that, if it wished, the legislature could easily have accomplished the result achieved below simply by using the familiar and unequivocal expression "husband or wife" or, even more obviously, "spouse"  as it significantly did in another portion, subsection (1)(c), of the identical statute. Its deliberate use of a quite different term in (2)(c) is strong evidence indeed that it intended a quite different meaning. Myers v. Hawkins, 362 So.2d 926 (Fla. 1978); 30 Fla.Jur. Statutes § 96 (1974).
The Bureau of Crimes Compensation also argues that the deputy's interpretation is consistent with what it discerns from Section 960.04(2)(c), (d), and (e) as a legislative policy to render the act unavailable to victims who have a "personal relationship" with their attackers. The legislative intent is, however, best expressed by, and its implementation must be limited to the precise exclusions set forth in the statute itself, see 30 Fla.Jur. Statutes §§ 79, 81 (1974)  none of which it bears repeating, includes Mrs. Ocasio.[6] Moreover, such a general "policy" would surely extend to an ex-spouse relationship, which, however, admittedly falls within the act. To the direct contrary of the appellee's position, we think that the carefully drawn provisions of Section 960.04(2) reflect a deliberate and wholly justified legislative choice to afford the benefits of this remedial statute to women like Mrs. Ocasio who are unfortunately but notoriously vulnerable to crimes committed upon them by their estranged husbands.[7] Having discerned that intent, we must effectuate it. Accordingly, the order under review is reversed and the cause remanded for further proceedings consistent herewith.
Reversed.
NOTES
[1] The marriage was dissolved a month later. Ocasio is now serving a fifteen-year sentence for aggravated battery.
[2] There is no dispute that the Ocasios had no sexual relationship and were not residing in the same household when the assault took place. Neither subsection (2)(d), (2)(e), nor any other exclusionary clause therefore applies.
[3] A single case, State v. Ellis, 325 Mo. 154, 28 S.W.2d 363 (1930), is cited as reflecting a contemporary "trend" in the definition of "affinity" to include the relationship between spouses. Ellis interpreted an "anti-nepotism" state constitutional provision to preclude a court clerk from appointing his wife as deputy. The intent underlying this enactment could hardly be more dissimilar from the one involved in the provision before us. The persuasiveness of Ellis upon the present question is therefore virtually nil.
[4] See, Parkway General Hospital, Inc. v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981), and cases and authorities cited.
[5] This is of course because of the somewhat circular reason that husband and wife were never regarded as being in "affinity" at all.
[6] See note 2, supra.
[7] See also, State v. Smith, 401 So.2d 1126 (Fla. 5th DCA 1981).