624 So.2d 773 (1993)
FRANK J. ROONEY, INC. n/k/a Centex-Rooney Construction Co., Inc., Appellant,
v.
LEISURE RESORTS, INC., et al., Appellees.
No. 92-2003.
District Court of Appeal of Florida, Fourth District.
September 15, 1993.
James E. Glass and Linda Dickhaus Agnant of James E. Glass Associates, Miami, for appellant.
D. Culver Smith, III of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for appellee-Leisure Resorts, Inc.
R. Earl Welbaum of Welbaum Zook & Jones, Coral Gables, for amicus curiae The Associated General Contractors of America.
MAGER, GERALD, Senior Judge.
This is an appeal from a final judgment entered pursuant to a jury verdict on a third-party indemnity claim for breach of statutory *774 warranty as prescribed in section 718.203(2), Florida Statutes (Supp. 1992).[1]
In the late 1970's, Leisure Resorts (hereinafter "developer") developed a 22 story, 132 unit residential condominium project (hereinafter "project") in West Palm Beach, Florida. The developer retained the architectural firm of Buigas and Associates (hereinafter "architect") who in turn hired Emilio Hospital, P.E., (hereinafter "engineer") to prepare plans and specifications for the project. Instead of utilizing a central air conditioning system, the engineer designed the project so that each condominium unit had its own separate air conditioning system consisting of a residential-type air handler and condensing unit. The air handler was located inside the condominium unit and the condenser was placed outside on the balcony alcove. The condensers were located on the east side of the building, one above the other "stacked" in a straight line 22 stories high. This particular mechanical design was less expensive than a central air conditioning system and reduced the total cost of the air conditioning system installed in the project. It was also anticipated that the association's common area maintenance costs would be reduced since each individual condominium unit owner would be responsible for repairing and maintaining their own air conditioning unit.
The architect originally specified "Carrier Super Efficient units with an energy efficiency rating (EER) of 9.0." During contract negotiations, however, the developer down-graded the specified air conditioning unit and instead specified a unit, having a lower EER, manufactured by "G.E., Carrier or equal as approved by Eng."
Frank J. Rooney, Inc., (hereinafter "contractor") was selected as the general contractor for the project. During the course of construction, the developer, architect and engineer recognized that the "stacked condenser" design presented a potential problem with the type of air conditioning unit that might be selected. Specifically, the heated air discharged from the exterior condensing units on each balcony would rise upwards to the next balcony causing the condensers located directly above to overload resulting in an automatic shutdown of the cooling system. One of the manufacturers specified by the architect, Carrier, declined the job because its units discharged hot air straight upwards. Another manufacturer, General Electric, would guarantee the performance of its unit if certain modifications were made. However, it was determined these modifications would increase the cost of the system and detract from the appearance of the building. Ultimately, units manufactured by Frigking Tappan were selected. The units were suggested by the contractor and its air conditioning subcontractor and were represented to be operational under the specific design conditions by their supplier/distributor. A written change order, prepared and signed by the developer and the architect, specifically directed the contractor to install the Tappan units. After the building was completed, occupied and its operation turned over to its residents, a number of unit owners experienced difficulty with their air conditioners. The architect and engineer evaluated several of the units and concluded they were incapable of cooling to their intended capacity due to recirculation (i.e. the condensers discharged heated air which rose to the condenser on the next floor causing it to overheat). They also concluded the problem was attributable to the unsuitability of the unit for the intended application.
Arthur Frogel and a number of other unit owners brought a class action suit against the developer alleging a variety of construction defects, including the failure of the air conditioning units to provide adequate cooling. As a result of this litigation, the developer filed a third-party complaint against the contractor seeking contribution and/or indemnity for its liability related to the inadequate air conditioning units. The developer alleged its liability was attributable to the contractor's breach of contract, breach of warranty or negligence. Over the objection of the contractor, the trial of the third-party complaint was severed from the main action brought by the unit owners against the developer. During the course of the main trial, the developer *775 and the unit owners reached a settlement of the pending claims including the claim involving the air conditioning units. Thereafter, the developer proceeded with the trial against the contractor on the indemnity action to recover monies it paid in settlement of the unit owners' claims.
At the conclusion of the developer's case, the contractor moved for a directed verdict which was partially granted as to the claims of breach of contract and negligence. The case went to the jury on the developer's indemnity claim for breach of statutory warranty. The jury returned a verdict in favor of the developer specifically finding the contractor, by supplying defective air conditioning units, breached its statutory warranty that the air conditioning units were reasonably fit for the specific purpose for which they were supplied. The jury awarded the developer $250,000.00 in damages for the air conditioning claim and $133,000.00 for attorneys fees and costs for defending that claim.
Various issues and claimed errors are raised in this appeal. We, however, find it unnecessary to address them in light of our interpretation of the scope of the statutory warranties contained in section 718.203, Florida Statutes (Supp. 1992). In particular, we believe the trial court erred in failing to grant the contractor's motion for a directed verdict on the indemnity claim at the conclusion of the developer's case because, as a matter of law, the statutory warranty set forth in section 718.203(2) was not applicable to the contractor.
Article 28(a) of the contract between the contractor and developer contains the following provision:
The Contractor warrants that it will furnish all of the materials and work necessary to complete the improvements in a good and workmanlike and first class manner and will furnish all of the equipment which will be installed in a good and workmanlike and first class manner, as all of the same are called for in the Contract Documents. And, the Contractor shall obtain and deliver to Owner such standard manufacturer's warranties as each equipment manufacturer may furnish with any equipment. The Contractor does not warrant or guarantee the design or sufficiency of the design of the improvements or that the materials and equipment furnished, assuming that they are the materials and equipment specified, will accomplish the purposes intended.

(emphasis added). The same article contains further language as follows:

Notwithstanding anything above set forth, if the within Project is submitted to a condominium regime, the certain warranties are imposed by Statute upon the Contractor, and in such event, the Contractor shall still be bound by such warranties notwithstanding any limits upon the Contractor's warranties as set forth herein. To the extent that the Contractor is liable for any said statutory warranties where the Project is converted to a condominium, the Contractor will indemnify the Owner against loss for any breach of such warranties by Contractor for which the Owner may also have any liability to others... .
(emphasis added).
The substance of the foregoing is that the contractor warrants it will furnish materials and work necessary to complete the project in a good and workmanlike manner and any manufacturer's warranties on any equipment furnished to the owner. However, the contractor does not warrant or guarantee the design or sufficiency of the design of any improvements, materials or equipment furnished or that such will accomplish the purposes intended. Notwithstanding this disclaimer, the contractor contractually recognized that where certain warranties are imposed on him by statute, he would be bound by such statutory warranties and would indemnify the owner against any loss resulting from the breach of its warranties for which the owner may be liable to others.
This appeal requires that we determine the scope and extent of a contractor's "statutory" warranties. In particular, whether section 718.203(2) was intended to create a warranty as to the fitness of a product for the purpose or use intended, so that by selecting an air conditioning system, the contractor warranted to the developer and purchaser of a condominium unit the *776 fitness of that system for the purpose or use intended, namely, to sufficiently cool the area it was intended to serve. We believe the statute was not intended to impose on contractors the same warranties applicable to developers.
We note that this appeal presents an issue of first impression and that counsel have not furnished us with any case law in this state or in any other jurisdiction specifically dealing with statutory warranties imposed upon developers and contractors.
In denying the contractor's motion for a directed verdict and submitting the case to the jury, the lower court determined and instructed the jury that "as a matter of law ... Rooney warranted the fitness of the air conditioning equipment for the individual condominium units ...", and left it for the jury to determine "whether the air conditioning equipment supplied by Rooney for the individual condominium units was defective" (meaning that "it was not reasonably fit for the specific purpose for which it was supplied") (emphasis added). Although the statute, not a model of precision, leaves some latitude for varying interpretations, we believe a common sense reading of the statute requires we conclude the legislature intended to establish a distinctively different category of implied warranties applicable to contractors than those applicable to developers. The law favors a rational and sensible construction of statutes. Higgins v. Higgins, 146 So.2d 122 (Fla. 1st DCA 1962). The legislative delineation of the developer's and contractor's warranties, as they appear in section 718.203, Florida Statutes (Supp. 1992), are set forth below:[2]

THE DEVELOPER'S WARRANTY: THE CONTRACTOR'S WARRANTY:
§ 718.203 § 718.203
(1) The developer shall be deemed (2) The contractor, and all
to have granted to the purchaser subcontractors and suppliers, grant
of each unit an implied warranty to the developer and to the purchaser
of fitness and merchantability for of each unit implied warranties of
the purposes or uses intended as fitness as to the work performed or
follows: materials supplied by them as
 follows:
 (a) As to each unit, a warranty
for 3 years commencing with the
completion of the building
containing the unit.
 (b) As to the personal property
that is transferred with, or
appurtenant to, each unit, a
warranty which is for the same
period as that provided by the
manufacturer of the personal
property, commencing with
the date of closing of the purchase
or the date of possession of the
unit, whichever is earlier.
 (c) As to all other improvements
for the use of the unit owners, a
3-year warranty commencing with the
date of completion of the
improvements.
 (d) As to all other personal
property for the use of unit
owners, a warranty which shall
be the same as that provided by
the manufacturer of the personal
property.
 (e) As to the roof and structural (a) For a period of 3 years from the
components of a building or other date of completion of construction of
improvements a building or

*777
and as to mechanical, electrical, improvement, a warranty as to the
and plumbing elements serving roof and structural components of the
improvements or a building, building or improvement and
except mechanical elements serving mechanical and plumbing elements
only one unit, a warranty for a serving a building or an improvement,
period beginning with the except mechanical elements serving
completion of construction of each only one unit.
building or improvement and
continuing for 3 years thereafter (b) For a period of 1 year after
or 1 year after owners other than completion of all construction, a
the developer obtain control of warranty as to all other improvements
the association, whichever occurs and materials.
last, but in no event more than 5
years.
 (f) As to all other property
which is conveyed with a unit, a
warranty to the initial purchaser
of each unit for a period of 1 year
from the date of closing of the
purchase or the date of possession,
whichever occurs first.
(emphasis added).

The distinction between the implied warranties applicable to developers and contractors is clearly delineated in the statute. The warranty imposed upon the developer and granted to the purchaser of each unit is a "warranty of fitness and merchantability for the purposes or uses intended"; the implied warranty of the contractor in favor of the developer and unit owner is a "warrant[y] of fitness as to the work performed or materials supplied." The "intended purpose" or "intended use" is seemingly a matter more within the scope and control of the developer through its architect and engineer; whereas, the competency or fitness of the work being performed and the quality of the materials being supplied are more within the control of the contractor.
Under section 718.203(1)(b) and (d), the unit owner receives an implied warranty from the developer that the "personal property that is transferred with, or appurtenant to each unit" and "all other personal property for the use of unit owners" will be fit for the "purpose or use intended" for the "same period as that provided by the manufacturer." We believe this broad language was intended to encompass within its scope a manufactured unit such as an individual air conditioning unit. This is further evident by the language of section 718.203(1)(f), which imposes an implied warranty upon the developer in favor of "the initial purchaser of each unit" for "all other property which is conveyed within a unit" for "a period of 1 year from the date of closing of the purchase or the date of possession, whichever occurs first." We are unable to find any language of a similar nature or import contained within section 718.203(2), relating to the contractor's warranties, reflecting a legislative intent to impose a warranty of fitness for the "purposes or uses intended" in favor of a developer and unit owner on a contractor on a manufactured item such as an air conditioner serving an individual unit. When the legislature has carefully employed a term in one section of the statute, but omits it in another section of the same act, it should not be implied where it is excluded. St. George Island, Ltd. v. Rudd, 547 So.2d 958 (Fla. 1st DCA 1989); Ocasio v. Bureau of Crimes Compensation Div. of Workers' Compensation, 408 So.2d 751 (Fla. 3d DCA 1982); and Winter v. Hollingsworth, 587 F. Supp. 1289 (S.D.Fla. 1984), reversed and remanded on other grounds, 777 F.2d 1444 (11th Cir.1985). A court may not, in the process of construction, supply the omission. Dunham v. State, 140 Fla. 754, 192 So. 324 (1939). To extend the implied warranty of fitness for a particular use and purpose to the contractor would necessitate reading words or terms into section 718.203(2) that are not now present.
*778 Further, we do not believe that the words "materials supplied", as set forth in 713.203(2), or the phrase "all other improvements or materials," as set forth in section 713.203(2)(b), were intended to apply to manufactured personal property covered by the developer's warranties; nor were such terms intended to create an implied warranty of fitness "for the purposes or uses intended" so as to cause a contractor to statutorily guarantee the operating efficiency or design of an air conditioning unit. The use of the word "materials" and "improvements" in the section addressing the scope of the contractor's warranties must be read in the context of the fitness of the "work performed or materials supplied." DeSisto College, Inc. v. Town of Howey-In-The-Hills, 706 F. Supp. 1479, 1495 (M.D.Fla. 1989) ("Where one of the enumerated terms is a general one, it may be restricted to a narrower sense or less general meaning by the context in which it is used."). The quoted terms in the context in which they appear in the statute do not encompass "personal property" or "all other property" transferred to, conveyed or for the benefit of a unit owner and warranted by the developer "for the purpose or uses intended." There are no "manufacturer's warranties" delineated in the section relating to contractors  that phrase only appears in the section relating to developers. Therefore, manufactured items which are "personal property" for which there would be a "manufacturer's warranty" would not logically and reasonably fall within the scope of the words "materials" or "all other improvements" as they appear in the section dealing with contractors. See Weitzel v. State, 306 So.2d 188 (Fla. 1st DCA 1974) ("It is fundamental that words, phrases, clauses, sentences and paragraphs of a statute may not be construed in isolation, but that on the contrary, a statute must be construed in its entirety.").
The fact that the contractor, in this case, selected the particular air conditioning units within the contract specifications of "General Electric, Carrier or equal as approved by Eng.," is not deemed to create a statutory warranty "for the purpose or uses intended." In our view, the statute does not create an implied warranty upon the contractor for the particular use intended to be served by the air conditioning unit simply because the contractor recommended a particular unit be used, particularly where the unit selected was within the specifications delineated by the developer's engineer and, especially where the selection was approved by the developer and its representatives. While there may be factual scenarios that might impose an implied warranty on a contractor "for the purposes or uses intended," the statute, itself, does not create such warranty and the particular facts here, negate such warranty. As previously noted, the contract between the parties contains a specific disclaimer that "the contractor does not warrant or guarantee the design or the sufficiency of the design of the improvements or that the materials or equipment furnished, assuming that they are the materials and equipment specified, will accomplish the purposes intended." The language in section 718.203(2) does not negate this contractual disclaimer and was not intended by the legislature to impose warranties upon a contractor for "design" or fitness for "purposes intended."
For the foregoing reasons, the judgment appealed from is reversed and the cause is remanded with directions to dismiss the third party complaint with prejudice.[3]
Since the matter presented in this appeal involves a question of great public importance and is likely to have a great effect on the proper administration of justice throughout *779 the state, we certify the following question to the Supreme Court of Florida:
WHETHER THE PROVISIONS OF SECTION 718.203(2), FLORIDA STATUTES (SUPP. 1992), IMPOSE ON A CONTRACTOR AN IMPLIED WARRANTY OF FITNESS FOR THE INTENDED USE AND PURPOSE, WHERE THE CONTRACTOR WITHIN THE CONTEMPLATION OF THE CONTRACT DOCUMENTS SUGGESTS AND SUPPLIES A MANUFACTURED ITEM SUCH AS INDIVIDUAL AIR CONDITIONING UNITS TO A DEVELOPER FOR USE IN A BUILDING PROJECT, WHERE SUCH ITEMS LATER PROVE NOT TO BE FIT FOR THE SPECIFIC PURPOSE FOR WHICH THEY WERE SUPPLIED?
REVERSED and REMANDED.[4]
ANSTEAD and WARNER, JJ., concur.
NOTES
[1] We note the relevant portions of the 1979 statute interpreted by the trial court contain the same language of section 718.203, Florida Statutes (Supp. 1992).
[2] We have taken the literary license of borrowing this helpful format from the brief submitted by the Amicus Curiae.
[3] The conclusion we reach here involves an interpretation of statutory warranties and does not affect the right of an individual unit owner to enforce the breach of implied warranty created by such statute, as against the developer of a project or affect the right to enforce warranties that might otherwise be created by contract or common law. Our holding specifically recognizes that the legislature created different statutory warranties applicable to developers and contractors within a given set of circumstances outlined in the statute and available to the purchaser of a condominium unit.
[4] There is a companion appeal, Frank J. Rooney v. Leisure Resorts, Inc., 624 So.2d 779 (Fla. 4th DCA 1993), involving an order taxing fees and costs, arising from the final judgment which is the subject matter of this appeal. In light of our reversal in this appeal, the order appealed from in the companion case is also reversed (see Per Curiam opinion rendered this date).