654 So.2d 911 (1995)
LEISURE RESORTS, INC., Petitioner,
v.
FRANK J. ROONEY, INC., Respondent.
No. 82578.
Supreme Court of Florida.
April 27, 1995.
*912 D. Culver Smith, III, of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for petitioner.
James E. Glass and Linda Dickhaus Agnant of James E. Glass Associates, Miami, for respondent.
R. Earl Welbaum of Welbaum, Zook & Jones, Coral Gables, amicus curiae for The Associated Gen. Contractors of America.
WELLS, Justice.
We have for review the following question certified to be of great public importance:
WHETHER THE PROVISIONS OF SECTION 718.203(2), FLORIDA STATUTES (SUPP. 1992), IMPOSE ON A CONTRACTOR AN IMPLIED WARRANTY OF FITNESS FOR THE INTENDED USE AND PURPOSE WHERE THE CONTRACTOR WITHIN THE CONTEMPLATION OF THE CONTRACT DOCUMENTS SUGGESTS AND SUPPLIES A MANUFACTURED ITEM SUCH AS INDIVIDUAL AIR CONDITIONING UNITS TO A DEVELOPER FOR USE IN A BUILDING PROJECT, WHERE SUCH ITEMS LATER PROVE NOT TO BE FIT FOR THE SPECIFIC PURPOSE FOR WHICH THEY WERE SUPPLIED?
Frank J. Rooney, Inc. v. Leisure Resorts, Inc., 624 So.2d 773, 779 (Fla. 4th DCA 1993). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question by holding that a contractor's statutory warranty of fitness does apply to manufactured items such as air-conditioning units supplied by the contractor for use in a building project but that the contractor does not warrant those items for a "specific purpose" under the provisions of section 718.203(2), Florida Statutes (Supp. 1992). Having accepted jurisdiction, we may review the district court's decision for any error. Lawrence v. Florida East Coast Ry., 346 So.2d 1012 (Fla. 1977). Based on our review, we approve the district court's decision in part and quash it in part.
Leisure Resorts, a developer, retained an architect who in turn retained an engineer to prepare plans and specifications for a 22-story condominium. The engineer designed the condominium so that each unit would contain its own air-conditioning system. In accordance with the design, a condensing unit was placed on the balcony of each condominium. The condensers were stacked one above the other all the way up the east side of the building. This design was less costly than a central air-conditioning system but presented a potential problem which the developer, architect, and engineer recognized early in the construction process. The heated discharged air from one condenser could rise up to the next condenser, causing the higher condenser to overload and automatically shut off.
Carrier, the air-conditioning unit manufacturer originally required in the contract specifications to supply air-conditioning units, declined the job. General Electric, a manufacturer later identified as acceptable in the specifications,[1] would guarantee its units only if certain modifications were made to the condominium design. Leisure Resorts declined to incorporate those modifications into the condominium design.
Frank J. Rooney, Inc. (Rooney) and the air-conditioning subcontractor subsequently suggested, and the architect and engineer approved, the use of Frigiking Tappan units. Tappan represented that the units would operate properly under the specified conditions, but after the building was complete, occupied, *913 and its operation turned over to its residents, a number of owners encountered problems with the condensers. The architect, engineer, and a representative of the contractor evaluated the condensers, and a dispute developed as to whether the air-conditioning units performed properly in cooling the apartments to an acceptable level. The parties also disagreed as to whether claimed deficiencies in the cooling capacity of the air-conditioning units were a result of the stacked design or a result of defects inherent in each particular air-conditioning unit supplied and installed by the contractor.
Several unit owners brought a class action against Leisure Resorts alleging a variety of construction defects, including failure of the air-conditioning units. Leisure Resorts then filed a third-party complaint against Rooney seeking contribution or indemnity for the defects Rooney allegedly caused. The third-party complaint was severed from the main action in which Leisure Resorts and the owners settled. Leisure Resorts then proceeded against Rooney for indemnity alleging that its liability to the owners was caused by Rooney's breach of contract, breach of warranty, or negligence.
At the close of Leisure Resorts' case, Rooney moved for a directed verdict. The trial court granted the motion as to the developer's claims for breach of contract and negligence. The case then proceeded to a jury determination on Leisure Resorts' indemnity claim for breach of the statutory warranties in section 718.203(2), Florida Statutes (Supp. 1992).[2] The court ruled as a matter of law that the contractor impliedly warranted the fitness of the condensers pursuant to section 718.203(2) and instructed the jury as follows:
The issues for your determination on Leisure Resorts' claim against Rooney for indemnity based on breach of warranty are whether the air conditioning equipment supplied by Rooney for the individual condominium apartments was defective within one year after substantial completion of all construction, and if so, whether such defect was a legal cause of loss or damage sustained by Leisure Resorts through no fault of Leisure Resorts.
The equipment was defective if it was not reasonably fit for the specific purpose for which it was supplied.
The jury returned a verdict in favor of Leisure Resorts and awarded the developer $250,000 in damages and $133,000 in attorney fees. Rooney appealed.
In its opinion, the district court set forth a detailed analysis of section 718.203.[3]Leisure Resorts, 624 So.2d at 776-777. Based on this analysis, the court concluded that manufactured items for which there would be a manufacturer's warranty do not fall within the language "materials supplied" as set forth in section 713.203(2) or "all other improvements and materials" as used in section 718.203(2)(b). Consequently, the court determined that, unlike the developer's warranty which expressly covers personal property *914 supplied and warranted by the manufacturer, the contractor's warranty did not extend to personal property such as air-conditioning condensers.
With respect to this point, we do not approve the district court's decision. Rather, we assume that the legislature intended the plain and obvious meaning of the words used in the statute. See Holly v. Auld, 450 So.2d 217 (Fla. 1984); United Bonding Insurance Co. v. Tuggle, 216 So.2d 80 (Fla. 2d DCA 1968). Specifically, we conclude that manufactured items constitute "materials" as that term is used in section 718.203(2). Accordingly, the contractor gives a statutory warranty of fitness when supplying manufactured items such as the air-conditioning condensers which are the subject of this case.
We do approve the district court's conclusion that the contractor's warranties and developer's warranties differ in scope. The district court noted a material distinction between the developer's warranty mandated by section 718.203(1) and the contractor's warranty mandated by section 718.203(2). The developer's implied warranty is a "warranty of fitness or merchantability for the purposes or uses intended" whereas the contractor's implied warranty is a "warranty of fitness as to the work performed or material supplied." When the legislature has used a term, as it has here, in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded. See Florida State Racing Comm'n v. Bourquardez, 42 So.2d 87 (Fla. 1949); accord Ocasio v. Bureau of Crimes Compensation, 408 So.2d 751 (Fla. 3d DCA 1982). Furthermore, the recognition of two distinct warranties comports with the idea that purposes or uses intended are matters more within the control of the developer who has control of the design of the building, while competency of work performed and quality of the materials supplied in constructing condominium buildings based upon the plans and specifications encompassed within the building contract are matters within the control of the contractor. To be in compliance with the section 718.203(2) implied warranty of fitness then, the contractor must provide work and materials which conform with the generally accepted standards of workmanship and performance of similar work and materials meeting the requirements specified in the contract. See David v. B & J Holding Corp., 349 So.2d 676 (Fla. 3d DCA 1977).
The trial court thus erred in instructing the jury that a defect in the equipment could be found, and the contractor's warranty was thereby violated, if the equipment was not reasonably fit for the specific purpose for which it was supplied. The trial court's instruction had the effect of including in the contractor's warranty the design of the condominium buildings.
Having determined that the statutory warranty is applicable to the contractor in respect to the air conditioning units, it follows that a directed verdict for the contractor as to the breach of implied warranty claim would be proper only if there was no evidence upon which a jury could find that the equipment was defective. Accordingly, we reject the district court's conclusion that a directed verdict for the contractor with regard to the contractor's statutory warranty was appropriate. Here, the engineer's testimony regarding his study of the malfunctioning units created a jury issue as to whether the air-conditioning units conformed with generally accepted standards of performance of air-conditioning units complying with the specifications of the contract.[4] That issue should be resolved by a jury instructed as to the contractor's warranty in accord with this opinion.
*915 Accordingly, we quash the district court's decision to the extent it is inconsistent with this opinion and remand to the Fourth District so that it may consider the remaining issues raised by Rooney which it declined to address after finding the warranty issue dispositive. If the district court determines the remaining issues are not dispositive of the case, it must remand for a new trial in which the trial court can provide a proper jury instruction with respect to the contractor's statutory warranty.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
ANSTEAD, J., recused.
NOTES
[1] Leisure Resorts changed the contract specifications for air-conditioning units during its negotiations with Rooney. Rather than Carrier units as originally specified, the contract as amended called for General Electric, Carrier, or their equal as approved by the engineer.
[2] The trial court interpreted the 1979 version of section 718.203, but as the district court noted, the relevant portions of that statute contain the same language as section 718.203, Florida Statutes (Supp. 1992).
[3] Section 718.203 reads in pertinent part:

(1) The developer shall be deemed to have granted the purchaser of each unit an implied warranty of fitness and merchantability for the purposes or uses intended as follows:
... .
(b) As to the personal property that is transferred with, or appurtenant to, each unit, a warranty which is for the same period as that provided by the manufacturer of the personal property, commencing with the date of closing of the purchase or the date of possession of the unit, whichever is earlier.
... .
(d) As to all other personal property for the use of the unit owners, a warranty which shall be the same as that provided by the manufacturer of the personal property.
... .
(2) The contractor, and all subcontractors and suppliers, grant to the developer and to the purchaser of each unit implied warranties of fitness as to the work performed or materials supplied by them as follows:
(a) For a period of 3 years from the date of completion of construction of a building or improvement, a warranty as to the roof and structural components of the building or improvement and mechanical and plumbing elements serving a building or improvement, except mechanical elements serving only one unit.
(b) For a period of 1 year after completion of all construction, a warranty as to all other improvements and materials.
[4] The engineer testified that, after conducting various tests on the units

we determined that there was a sufficient amount of recirculation around the condensing units to affect their performance. We also found that the capacity of the units under several different conditions, the conditions that were installed and all the conditions that were officially set units to test in the best possible conditions, the units did not meet the capacity that was specified on the contract drawings.... [T]he main conclusion is that the units were not performing, did not have the capacity sufficient to satisfy the contract documents even under the best conditions.