895 So.2d 1252 (2005)
Michel DELORME, Appellant,
v.
STATE of Florida, Appellee.
Nos. 5D04-594, 5D04-596, 5D04-597, 5D04-598, 5D04-599.
District Court of Appeal of Florida, Fifth District.
March 4, 2005.
*1253 John M. Fitzgibbons, and B. Kay Klein, of The Law Offices of John M. Fitzgibbons, Tampa, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
This is an appeal of an order denying a motion to dismiss the information. We affirm.
On January 14, 2004, defendants below, John Daniel Manning, Randy L. Williamson, Bernie D. Koerner, J.C. Bryant, and Michel Delorme [collectively "Appellants"] were charged by separate amended informations with (I) keeping a gambling house, a third degree felony in violation of section 849.01, Florida Statutes; and (II) a second degree misdemeanor in violation of sections 849.15(1)(2) and 849.23, Florida Statutes. Appellants, all represented by the same counsel, entered pleas of not guilty and filed identical motions to dismiss the information pursuant to Florida Rule of Criminal Procedure 3.190(c)(4). In support of dismissal, Appellants alleged:
1. The Defendant was arrested and charged with keeping a gambling house in violation F.S. 849.01.
2. There are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the Defendant.
3. This business, which was open to the general public featured more than fifty (50) amusements games, where the player, by the application of skill, could become entitled to receive something of value, not in excess of seventy-five cents on any game played. Players could, by the application of skill, win up to ($0.75) in credits and gift certificates that can be exchanged for gift certificates or merchandise only. These credits can be exchanged for merchandise only. These credits were never redeemable for cash or alcoholic beverages.
4. This Defendant had obtained all of his occupational license[s] and business licenses from all necessary government agencies, as well as their amusement machine certificates from the Florida Department of Revenue, prior to operating their allegedly illegal business.
5. F.S. 849.161(1) exempts arcade amusements [sic] centers which are operated for the entertainment of the general public and tourists as a bona fide amusement facility from the provisions of F.S. 849.01, 849.15, and 849.16. Defendant's place of business operated in this exact fashion.
Appellants also alleged that section 849.01 and 849.15, Florida Statutes, were unconstitutionally vague when read in conjunction with section 849.161(1)(a)1:

*1254 7. The language of the Statute does not provide adequate notice of the conduct it prohibits when measured by common understanding and practice. Further, the language of the statutes [sic] does not use language sufficiently definite to apprise those [sic] whom it applies what conduct on their part is prohibited. The Statutes are constitutionally impermissible because the language is so vague and broad that a person of common intelligence must speculate about its meaning and be subjected to arrest and punishment if the guess is wrong. The statute is worded so loosely that it leads to arbitrary and selective enforcement by vesting undue discretion as to its scope in those who prosecute.
8. F.S. 849.161(1)(a)1, requiring that the game be one that the application of skill has to be used, does not adequately inform the Defendant how much skill a game is required to have before it qualifies under the exception. If the outcome of the game is affected by some skill, but does not exclude every element of chance, the statutes give undue discretion to the state to say that a game of skill is prohibited by law. The statutes do not adequately advise how much skill is required before a game would meet the statutory exception of F.S. 849.161(1)(a)1. The statutes do not adequately advise the Defendant as to what conduct is prohibited.
The State filed a response/traverse to each of Appellants' motions to dismiss on January 16, 2004. The State said:
1. The Motion to Dismiss under Rule 3.190(c)(4) is legally insufficient in that it does not allege specific facts but mere conclusory allegations and is not sworn to as required.
2. The State denies that the defendant has listed all of the facts and that there are not undisputed facts.
3. The State submits that the defendant has failed to include facts demonstrating that the devices at issue are [sic] actually illegal slot machines or devices under s. 849.15 and s. 849.16, Florida Statutes.
4. The machines at issue were set to provide a specific rate of return for their operators and that rate of return could in fact be altered. Expert testimony provided to the State indicates that the devices are games of chance, not skill, due to the speed at which the devices operate; the programmed rate of return; and setting within the machines that preclude actual prediction by the player of the appropriate time to stop the action of the game.
5. The defendant's business was not open to the general public as required for an "arcade amusement center" under s. 849.161(1)(a)1. Despite the identification as an "amusement" center neither children nor anyone under 21 years old was allowed to become a "member" or enter the premises. This exception was also not met since the machines utilized were not coin operated as specifically required; were not games of skill; winners received coupons or tickets that were not redeemable for merchandise as required but instead were redeemed for gift certificates of unlimited value to various establishments which were the equivalent of cash; the machines were gambling devices under federal law.
With the agreement of both sides, at the hearing on the motions to dismiss, the court accepted as part of the record, the transcripts from prior civil forfeiture proceedings held in this case on December 3 and 5, 2003. The parties stipulated that none of the machines involved was coin-operated *1255 and that the businesses utilized gift certificates and gift cards  to places such as Publix, Food Lion, Winn-Dixie, TGI Friday's, Chili's, Home Depot and Wal-Mart  as payment for credits earned on the machines.
Appellants first called Thomas Fricke ["Fricke"], an attorney and consultant to the amusement and gambling businesses, who testified that he was familiar with amusement machines but that he had not been allowed access to the machines involved in this case; he was only allowed to review a list of the titles of the machines. Prior to becoming a consultant, he was involved in the analysis of machines to determine if they complied with the laws of a state in which the owners and operators of those machines desired to make the machines available for public play. He further stated he has had twenty years of studying these games and understanding the standards that apply to machines on a fifty-state basis. Fricke testified that he had conducted focus group studies to determine if the player makes a difference in the outcome and asking consumers what they think about the mechanics of the games. He conducted a study in Arkansas in May 2002, involving "eight-line style amusement games," which are among the machines involved in this case. Fricke opined that the data he compiled from conducting the study supported the hypothesis that the player makes a difference and can influence the outcome of a session of game play. Fricke testified that the player's decision as to how many credits to use in the game affects his odds, and the role of skill is simply to give the participant better odds. He testified a player can become skilled at a game by extended play on an amusement machine, which is absent from slot machines. Fricke explained that a main difference between slot machines and the machines in the present case were that on a slot machine a player could potentially win a jackpot from a single play, while on the amusement machines the most a player could win in a single play was a merchandise redemption value of seventy-five cents.
On cross-examination, Fricke admitted that no matter how good a player was, because the machine has within its program to determine the outcome, the player could not be guaranteed a win. The machines are programmed to produce a rate of return to the owners, usually fifty-five percent, but there was no mechanism to determine which player gets the higher rate of return and which player gets the lower rate of return. Fricke stated that during the focus group study, some of the individuals actually did worse on the games the longer they played instead of showing improvement. These individuals could have got a "cycle in the machine that didn't allow them to win."
The State called Deputy Brian Beery to testify as its expert witness. For the past twenty-three years he has been a technical operations detective with the Pinellas County Sheriff's Office, investigating crimes involving the types of machines involved in this case. In his line of work, he did analysis of machines for comparison to the state statutes. He agreed with Fricke's testimony that there was an element of chance in these machines, but also testified that a player had no control over the outcome of what the machine was going to pay out. The machines allowed a winning or losing hand based on the retention ratio. He testified that the only change that the players affected was how much the player bet; the program determined whether the player won or lost.
At the close of the hearing, the court found that there was some skill that could be developed in these games, though the court described it as a "minimal" skill. *1256 The court next found that the businesses were open to the public even though they excluded minors. The court also found that based on the language in subsection (1)(a)1. of the statute and the language in the "truck stop section," the use of the word "coin" meant "coin" only, and that the use of the language "merchandise" referred to actual physical goods rather than gift certificates or gift cards. Accordingly, the court denied Appellants' motions to dismiss and agreed that its ruling had the effect of rendering the seized machines illegal under Florida Statutes.
Following the hearing, each Appellant entered into a nolo contendere plea, reserving the right to appeal the denial of the motion to dismiss on constitutional grounds.
We begin by noting that the bulk of Appellants' arguments have been recently rejected by the Second District in State v. Cyphers, 873 So.2d 471 (Fla. 2d DCA 2004). In the Cyphers case, the State appealed the trial court's granting of the two defendants' motions to dismiss on the grounds that the statutory scheme was unconstitutionally vague. 873 So.2d at 472. The Cyphers defendants had been charged under the same statutes as in this case. The court reversed, finding that sections 849.01, 849.15 and 849.161,[1] Florida Statutes, were not impermissibly vague. Id. The Cyphers opinion offers a detailed analysis of the issues that we need not duplicate here.
We agree with Cyphers that the constitutional challenge based on vagueness fails.
AFFIRMED.
THOMPSON and PALMER, JJ., concur.
NOTES
[1] Section 849.161(1)(a)1., Florida Statutes (2003), is the exception for amusement games or machines and provides:

Nothing contained in this chapter shall be taken or construed as applicable to an arcade amusement center having amusement games or machines which operate by means of the insertion of a coin and which by application of skill may entitle the person playing or operating the game or machine to receive points or coupons which may be exchanged for merchandise only, excluding cash and alcoholic beverages, provided the cost value of the merchandise or prize awarded in exchange for such points or coupons does not exceed 75 cents on any game played.