975 So.2d 526 (2008)
Conrad H. ROWE; and Dodge City Games, LLC, Appellants,
v.
COUNTY OF DUVAL, a Political Subdivision of the State of Florida; Jacksonville Sheriff's Office; and Harry Shorstein, State Attorney, Fourth Judicial Circuit, Appellees.
No. 1D06-6520.
District Court of Appeal of Florida, First District.
January 24, 2008.
Rehearing Denied March 4, 2008.
Kelly B. Mathis of Mathis & Murphy, P.A., Jacksonville, for Appellants.
Bill McCollum, Attorney General, and George Waas, Special Counsel, Tallahassee; and Thomas M. Beverly, Office of General Counsel, Jacksonville, for Appellees.
BENTON, J.
Conrad H. Rowe and Dodge City Games, LLC, d/b/a Copacabana (Copacabana) appeal the final summary judgment denying them declaratory and injunctive relief they sought against Duval County, the Jacksonville Sheriff's Office, the State of Florida, and Harry Shorstein, State Attorney for the Fourth Judicial Circuit.[1] Owners and operators of amusement centers in Duval County, appellants[2] contend they fall within the safe harbor provision in section 849.161(1)(a)(1.), Florida Statutes (2006), and therefore outside the ban on gambling houses and slot machines. See §§ 849.01 and 849.15, Fla. Stat. (2006). The trial court ruled the safe harbor provision unavailable on the ground that the "amusement games or machines" also took bills. We reverse and remand for further proceedings.
The availability of a "safe harbor" depends on whether Copacabana's establishment *528 is "an arcade amusement center," which turns on the answers to two separate questions. The safe harbor provision reads:
Nothing contained in this chapter shall be taken or construed as applicable to an arcade amusement center having amusement games or machines [1] which operate by means of the insertion of a coin and [2] which by application of skill may entitle the person playing or operating the game or machine to receive points or coupons which may be exchanged for merchandise only, excluding cash and alcoholic beverages, provided the cost value of the merchandise or prize awarded in exchange for such points or coupons does not exceed 75 cents on any game played.
§ 849.161(1)(a)(1.), Fla. Stat. (2006) (bracketed numbers inserted). On this record, whether skill wins the prizes is disputed, but the dispute is material only if the machines "operate by means of the insertion of a coin." Id.
The trial court entered summary judgment against Copacabana without reaching the skill question, relying on State v. Cyphers, 873 So.2d 471, 473 (Fla. 2d DCA 2004), and Delorme v. State, 895 So.2d 1252, 1256 (Fla. 5th DCA 2005), which it read as holding that the phrase "games or machines which operate by means of the insertion of a coin" in section 849.161(1)(a)(1.) reflects a legislative intention to limit the exception to machines that operate by coin only. The facts concerning coin-operation in the present case are not in dispute: Copacabana's machines "operate by means of the insertion of a coin," but the same machines can also operate by means of the insertion of bills.
The trial court's reliance on Cyphers and Delorme was misplaced. Neither case decided the question presented here where machines that can take bills also "operate by means of the insertion of a coin." § 849.161(1)(a)(1.), Fla. Stat. (2006). Both hold simply that machines that do not take coins cannot bring an arcade amusement center within the safe harbor provision. In Cyphers, the "[d]efendants' machines were not coin operated. Rather, Cyphers testified that the machines did not accept quarters and were operated by cash bills." 873 So.2d at 473 (emphasis supplied). Similarly, in DeLorme, the "parties stipulated that none of the machines involved was coin-operated." 895 So.2d at 1254-55 (emphasis supplied).
The safe harbor provision at issue here dates to the original enactment of the statute. See Ch. 84-247, § 3, at 1101, Laws of Fla. The difference in wording between the "safe harbor provision," § 849.161(1)(a)(1.), Fla. Stat. (2006), and the "truck stop provision," § 849.161(1)(a)(2.), Fla. Stat. (2006), can be fully explained by technological change between 1984 and 1996. Obiter dicta in Cyphers can be read to support the trial court's view, but the language in question[3] *529 overlooks the historical development of the statute. When the safe harbor provision was enacted in 1984, there were no amusement games or machines that took bills. Such machines did exist[4] by the time the separate "truck stop provision" was enacted in 1996. See Chs. 96-320, § 159, at 1683-84 and 96-323, § 79, at 1848, Laws of Fla.[5]
The record establishes that Copacabana owns an arcade amusement center with machines that "operate by means of the insertion of a coin." The fact that bills, too, can operate these coin-operated machines does not render the safe harbor provision unavailable to Copacabana. But the safe harbor provision does not apply unless the machines in question are also such that, not mere chance, but "application of skill may entitle the person playing or operating the game or machine to receive points or coupons . . . [worth not more than] 75 cents on any game played." § 849.161(1)(a)(1.), Fla. Stat. (2006). On remand, the trial court must reach and resolve this second, concededly disputed question before entering declaratory judgment, whether for or against Copacabana.
Reversed and remanded.
KAHN, J., concurs; VAN NORTWICK, J., dissents with opinion.
VAN NORTWICK, J., dissenting.
Because I conclude that the trial court has correctly interpreted the statute before us, I respectfully dissent.
Chapter 849 prohibits gambling houses and slot machines. See §§ 849.01 and 849.15, Fla. Stat. (2005). The legislature has expressly stated that these statutes are to be "liberally" construed, not strictly construed, in the "lawful exercise of the police power of the state for the protection of the public welfare, health, safety and morals of the people of the state." § 849.46, Fla. Stat. (2005). Accordingly, when interpreting section 849.16(1)(a)1., which creates an exception to this prohibition for amusement games or machines at arcade amusement centers which operate by means of "insertion of a coin," we are obligated to narrowly construe this exception. See, e.g., Miriam S. Wilkinson & Eric H. Miller, Florida Game Promotions Statute: Novel Application of an Exception to Florida's Prohibition on Gambling, 11 Gaming L.Rev. 98, 101-02 (2007).
The majority reasons that, because this safe harbor exception was enacted in 1984 when machines did not take bills and the legislature subsequently amended section 894.161(1)(a)2. in 1996 by creating the so-called "truck stop exception" that allowed the use of coins and bills, the legislature did not intend to retain the limited exception in section 849.161(1)(a)1. to machines that operate by coin only. Respectfully, I cannot agree.
In examining 96-320, § 159, at 1683-84 and chapter 96-323, § 79, at 1848, Laws of Florida, when the legislature created the truck stop exception, it was also required to address the safe harbor exception by renumbering section 849.161(1) to *530 849.16(1)(a)1. This circumstance indicates to me that the legislature necessarily had to be aware of the "coin" only language which remained in the safe harbor exception and that the legislature made the decision not to modify the safe harbor exception to mirror the language enacted in the truck stop exception.
The majority recognizes the "coin only" language in State v. Cyphers, 873 So.2d 471, 473 (Fla. 2d DCA 2004), relied upon by the trial court, but concludes that this language was simply obiter dicta. Again, I respectfully disagree. The language in Cyphers was necessary to the ultimate conclusion of the court that machines that operate by use of the insertion of bills do not qualify for the safe harbor exception. See Black's Law Dictionary, 1100 (7th ed. 1999)(recognizing that obiter dictum is "comment made during the course of delivering a judicial opinion, . . . that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)" (emphasis supplied)). Thus, I do not consider the operative language in Cyphers, quoted at footnote 3 of the majority opinion, to be obiter dicta.
The Cyphers court, 873 So.2d at 473, relied upon an opinion of the Florida Attorney General that addressed the question whether games or machines utilized by adult arcade amusement centers could legally operate by means of the insertion of a coin as well as the insertion of paper currency. That opinion concludes that "the Legislature's use of only the term `coin' in section 849.161(1)(a)1., reflects an intent that only those machines that operate by use of a coin fall within the exception to the prohibition against slot machines." Id. (quoting Op. Att'y Gen. Fla. 2004-12 (2004)). The Cyphers court employed much of the same reasoning as the Attorney General and implicitly accepted that opinion's further conclusion that "[t]hose machines which operate by use of a coin or paper currency (which are permitted under section 849.161[1][a]2., Florida Statutes, for truck stops) would not qualify . . . for the exception afforded for arcade amusement centers." Op. Att'y Gen. Fla.2004-12 (2004).
When the legislature reenacted section 849.161(1)(a)1. in 2005, after the decision of the Cyphers court incorporating the reasoning of the Attorney General, it is presumed to have known this construction being given to these two exceptions to the gambling laws and approved that construction. See Collins Inv. Co. v. Metropolitan Dade County, 164 So.2d 806, 809 (Fla. 1964)("When a statutory provision has received a definite judicial construction, a subsequent re-enactment will be held to amount to a legislative approval of the judicial construction. The Legislature is presumed to be acquainted with judicial decisions on the subject concerning which it subsequently enacts a statute.").
While I do agree with the majority that the fairness of the distinction the legislature has made between these two exceptions is debatable, I am persuaded that the legislative intent to maintain this distinction is clear and it is not within the prerogative of this court to modify that legislative intent. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984); see also State v. Ashley, 701 So.2d 338, 343 (Fla.1997)(interpretation of language in statute cannot be based on the court's own view of the best policy). "[I]nsertion of a coin," section 849.161(1)(a)1., means just that. It does not mean "insertion of a coin or other currency." § 849.161(1)(a)2. Accordingly, I would affirm the summary judgment.
NOTES
[1] In an order not challenged here, the trial court concluded that the complaint failed to state a claim for declaratory relief against the State of Florida and dismissed the State as a party defendant.
[2] The trial court did not dismiss Conrad H. Rowe as a party plaintiff even though he seeks to establish the scope of an exception to a penal statute under which he is currently being prosecuted. See Merry-Go-Round, Inc. v. State ex rel. Jones, 136 Fla. 278, 186 So. 538, 540 (1939) (noting "the well settled equitable principle that injunction will not lie to enjoin a criminal prosecution"). See generally Duval County Sch. Bd. v. Armstrong, 336 So.2d 1219, 1221 (Fla. 1st DCA 1976) (reversing order enjoining administrative proceeding convened in connection with teacher's discharge, saying any "necessity that the Board honor such rights as Armstrong demands . . . must be determined in the concrete circumstances of the case after the Board has acted"). In any event, under Deeb v. Stoutamire, 53 So.2d 873 (Fla. 1951), the trial court was obliged to reach the "safe harbor" question it addressed in the declaratory judgment at the behest of Mr. Rowe's fellow plaintiff and appellant, Dodge City Games, LLC d/b/a Copacabana.
[3] Relying on an opinion of the attorney general, see Op. Att'y Gen. Fla.2004-12 (2004), the Cyphers court stated in obiter dicta:

The definition of slot machine includes a machine that may be operated by the insertion of "any piece of money, coin, or other object." In contrast, section 849.161(1)(a)(1) refers specifically to machines which operate by the insertion of "a coin." Furthermore, section 849.161(1)(a)(2), creating an exception pertaining to truck stops, refers to machines operated by the insertion of "a coin or other currency." The legislature's use of different terms in different sections of the same statute is "strong evidence that different meanings were intended." Clarke v. Schimmel, 774 So.2d 7, 9 (Fla. 2d DCA 2000). Thus, "[w]hen the legislature has used a term . . . in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded." Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So.2d 911, 914 (Fla. 1995).
State v. Cyphers, 873 So.2d 471, 473 (Fla. 2d DCA 2004).
[4] Undisputed materials of record established when the new machines became available.
[5] Requiring different constructions because of the difference in wording between the "safe harbor provision" and the "truck stop provision" would, at most, give rise to an ambiguity in the definition of a crime. The rule is that "statutes defining crimes are to be strictly construed against the State." Chicone v. State, 684 So.2d 736, 741 (Fla. 1996).