Dear Mr. Hess:
You ask substantially the following question:
Does the electronic game operated by a veterans' organization as described in your letter constitute an illegal slot machine or device?
In sum:
Based upon the information you have provided regarding the electronic machine in question, such a machine would appear to constitute an illegal slot machine or device.
You state that a local veterans' organization has acquired electronic games which appear to be slot-type machines. This office has been advised that the veterans' organization considers these games to involve an element of skill and thus be permitted under section 849.161, Florida Statutes, which provides an exception to the state's gambling laws for arcade amusement centers and truck stops. The Parker Chief of Police has directed the organization to turn the games off and your office has met with the organization and the games' distributor regarding the use of such games.
According to your letter, the games operate as follows:
1. A player inserts a card containing purchased credits into the machine and is assigned points.
2. The player then wagers a number of points against the game.
3. When a button is pushed, images on the screen mimic the rotation of drums on a mechanical slot machine.
4. When the images come to rest, the order of their appearance on the machine shows whether the player has won (gained points) or lost.
5. At the conclusion of play, accumulated (or remaining) points are converted to a monetary amount and placed on a Visa card; the card cannot be cashed out by the machine or at the VFW (Veterans of Foreign Wars) Post establishment. However, players can use the card to purchase merchandise at retail stores, much like a gift card.
From the information you have provided, it appears that the machines in question are operated by the insertion of an object into the machine, i.e., a card containing purchased credits, which permits the player to place a wager and play a game on the machine involving an element of chance. Points are gained or lost based upon the outcome of the game. At the conclusion of play, the points are converted into a monetary amount and placed on a card which may be used to purchase merchandise at retail stores. Based upon such a description, the machines in question would appear to constitute slot machines as defined in section 849.16(1), Florida Statutes.
Pursuant to section 849.15, Florida Statutes, it is unlawful to possess or permit the operation of any machine or device that satisfies the description provided in section 849.16, Florida Statutes. Section 849.16 describes the prohibited machines or devices in the following terms:
"(1) Any machine or device is a slot machine or device within the provisions of this chapter if it is one that is adapted for use in such a way that, as a result of the insertion of any piece of money, coin, or other object, such machine or device is caused to operate or may be operated and if the user, by reason of any element of chance or of any other outcome of such operation unpredictable by him or her, may:
(a) Receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or any check, slug, token, or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value or which may be given in trade; or
(b) Secure additional chances or rights to use such machine, apparatus, or device, even though it may, in addition to any element of chance or unpredictable outcome of such operation, also sell, deliver, or present some merchandise, indication of weight, entertainment, or other thing of value."[1] (e.s.)
Thus, if the receipt of a prize is dependent on any element of chance, the machine would fall within the above definition of a slot machine proscribed by section 849.15, Florida Statutes.[2] As stated by the Supreme Court of Florida in Deeb v. Stoutamire[3] in considering the statutory definition of a slot machine:
"The law denouncing slot machines defines them as devices so adapted that "as a result of the insertion" of a coin they are "caused to operate or may be operated, and by reason of any element of chance orof other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any * * * thing of value" or anything which may be exchanged for something of value, such as money or merchandise, "or the user may secure additional * * * rights" to play, "even though [the machine] may, in addition to any element of chanceor unpredictable outcome" deliver merchandise or entertainment. (emphasis supplied by Court)
The Court defined slot machines by referring to the chance or unpredictability of the mechanism, not of the player.
While the statutory definition of slot machines has been subsequently amended, such amendments do not appear to have affected the operative language of the Court's holding in Deeb relating to chance. More recently, the district court in State, Department of Business andProfessional Regulation, Division of Alcoholic Beverages v. BrowardVending, Inc., [4] relied on Deeb in reversing the lower court's ruling that a game machine in which skill was a significant factor in operating and winning did not violate the statute. Instead, the district court held that where chance is an element of the game, section 849.15, Florida Statutes, is violated.
An exception to the proscription against slot machines is contained in section 849.161, Florida Statutes, for arcade amusement centers which have certain coin-operated amusement games or machines in which skill is present. The statute provides:
"Nothing contained in this chapter shall be taken or construed as applicable to an arcade amusement center having amusement games or machines which operate by means of the insertion of a coin and which by application of skill may entitle the person playing or operating the game or machine to receive points or coupons which may be exchanged for merchandise only, excluding cash and alcoholic beverages, provided the cost value of the merchandise or prize awarded in exchange for such points or coupons does not exceed 75 cents on any game played.
* * *
Nothing in this subsection shall be taken or construed as applicable to a coin-operated game or device designed and manufactured only for bona fide amusement purposes which game or device may by application of skill entitle the player to replay the game or device at no additional cost, if the game or device: can accumulate and react to no more than 15 free replays; can be discharged of accumulated free replays only by reactivating the game or device for one additional play for such accumulated free replay; can make no permanent record, directly or indirectly, of free replays; and is not classified by the United States as a gambling device in 24 U.S.C. s. 1171, which requires identification of each device by permanently affixing seriatim numbering and name, trade name, and date of manufacture under s. 1173, and registration with the United States Attorney General, unless excluded from applicability of the chapter under s. 1178. This subsection shall not be construed to authorize video poker games, or any other game or machine that may be construed as a gambling device under Florida law."[5]
The term "arcade amusement center" as used in section 849.161 means "a place of business having at least 50 coin-operated amusement games or machines on premises which are operated for the entertainment of the general public and tourists as a bona fide amusement facility."[6] Subsection (1)(a)2. of the statute creates a similar exemption for amusement games or machines located in a truck stop as defined therein.[7] Thus, section 849.161, Florida Statutes, provides an exemption for machines that would otherwise be prohibited by Chapter 849, Florida Statutes, if those machines are located in an arcade amusement center or truck stop, as those terms of defined by statute, and if, by the application of skill, the player receives a prize as prescribed therein.[8]
This office, however, has no information that would indicate that the veterans' organization qualifies for either exception. In fact, you have advised this office in a subsequent letter that the veterans' organization does not have 50 machines on its premises and that it is open only to its members and their guests. Accordingly, it would not fall within the exception afforded arcade amusement center as that term is defined by statute.
Nor do the machines in question constitute games that charitable or nonprofit organizations would be authorized to conduct as exemption to the general prohibition against gambling under Chapter 849, Florida Statutes. Such machines do not fall within the terms of section 849.0931, Florida Statutes, which authorizes certain nonprofit organizations to conduct bingo games or instant bingo, [9]
or section 849.0932, Florida Statutes, which authorizes specified nonprofit organizations to conduct drawings by chance.[10]
Accordingly, I am of the opinion that the electronic games operated by a veterans' organization as described in your letter constitute illegal slot machines or devices.
Sincerely,
 Pam Bondi Attorney General
PB/tjw
[1] Cf. s. 551.102(8), Fla. Stat., defining "Slot machine" for purposes of Ch. 551, Fla. Stat., which authorizes slot machine gaming under certain conditions in Miami-Dade County or Broward County.
[2] And see Op. Att'y Gen. Fla. 89-05 (1989), in which this office determined that a coin operated "crane game" having an unpredictable outcome or chance which is inherent in the machine qualifies as a slot machine or device within the meaning of Ch. 849, Fla. Stat.
[3] 53 So. 2d 873, 874 (Fla. 1951).
[4] 696 So. 2d 851 (Fla. 4th DCA 1997).
[5] Section 849.161(1)(a)1. and (b), Fla. Stat. It should be noted that in order to qualify for the exemption afforded by s. 849.161(1)(a), Fla. Stat., the machine must be able to accept coins, not merely currency. See Rowe v. County of Duval,975 So. 2d 526 (Fla. 1st DCA 2008).
[6] Section 849.161(2), Fla. Stat.
[7] The statute refers to a truck stop, as defined in Ch. 336, Fla. Stat., and which operates a minimum of 6 functional diesel fuel pumps.
[8] Cf. Op. Att'y Gen. Fla. 95-27 (1995) (mere pushing of a button marked "skill" does not appear to constitute the application of skill for purposes of the exemption in s. 849.161, Fla. Stat.; rather, skill must be a factor with the player's superior knowledge and attention or superior strength, agility and practice as an element in the player's ability to win); Inf. Op. to Sen. James King, Jr., dated April 1, 2003 (while s. 849.161, Fla. Stat., requires that skill be a factor in determining whether the player is entitled to receive a prize, the outcome of the game be dependent solely on skill). Ultimately, however, the determination as to whether an amusement game involves the application of skill is a question of fact that cannot be resolved by this office. See, e.g., Op. Att'y Gen. Fla. 95-27 (1995); Inf. Op. to Gregory L. Coler, dated June 12, 2003, and Inf. Op. to Rep. Sandra L. Murman, dated October 6, 2003.
[9] See s. 849.0931, Fla. Stat., authorizing a charitable, nonprofit, or veterans' organization, as defined therein, to conduct bingo games in which participants pay a sum of money for the use of one or more bingo cards and the numbers are drawn and announced, or instant bingo using tickets by which a player wins a prize by opening and removing a cover from the ticket to reveal a set of numbers, letters, objects, or patterns, some of which have been designated in advance as prize winners. But see Op. Att'y Gen. Fla. 08-35 (2008), stating that a machine or device comes within the scope of s. 849.16, Fla. Stat., if that machine dispenses an instant bingo game ticket that may, dependent on the element of chance, entitle the recipient to a prize.
[10] See s. 849.0935(1)(a), Fla. Stat., defining a drawing by chance as "an enterprise in which, from the entries submitted by the public to the organization conducting the drawing, one or more entries are selected by chance to win a prize."